BUSSE ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* GRAND FINALE, INC. ET AL., APPELLANTS AND CROSS-APPELLEES.

(Nos. C-800648 and C-800893—Decided November 10, 1981.)

Strauss, Troy & Ruehlmann Co., L.P.A., and Mr. Charles G. Atkins, for Herman and Bonnie Busse.

Clark & Eyrich Co., L.P.A., Mr. Walter E. Haggerty, Mr. Pierce E. Cunningham, Messrs. Frost & Jacobs and Ms. Susan Grogan Faller, for Grand Finale, Inc., and Larry and Cindy Youse.

BLACK, J. On New Year's Eve 1976, Herman and Bonnie Busse joined some friends for dinner at the restaurant known as Grand Finale. The chair on which Herman was seated collapsed during the meal, injuring his coccyx (it had to be surgically removed a year later), back, neck and legs. What caused the chair's collapse was not revealed in the trial, apparently because the chair was disposed of without subjecting it to expert inspection. The Busses sued the operating corporation and the managers thereof, claiming negligence and strict liability, as well as breach of implied warranty[1] and loss of consortium. The jury returned a verdict in favor of Herman for $80,000 and Bonnie for $25,000. Since the jury stated in answer to an interrogatory that the evidence was insufficient to prove that the defendants were negligent, the award was made on grounds of strict liability.

The principal question presented by the defendants' appeal concerns the applicability of the doctrine of strict liability to a restaurant operator so as to make him liable to his customers for personal injuries received from the collapse of a chair without proving negligence. The plaintiffs cross-appealed, raising the single issue of their entitlement, on the evidence, to a directed verdict in their favor on their action for negligence.

The defendants' first assignment of error presents the question of whether the trial court erred when it instructed the jury, over the defendants' objection, that they could find for the plaintiffs on

---

[1] Although plaintiffs' complaint alleged breach of implied warranty as a separate cause of action, it was not presented to the jury as a separate basis of an award to the plaintiffs. The plaintiffs do not allege this as an error, and we do not think it was erroneous. The chair was obviously not sold to plaintiffs, and an implied warranty of fitness for a particular purpose arises under R.C. 1302.28 only between buyer and seller under certain circumstances. "* * * A 'sale' consists * * * [of] the passing of title from the seller to the buyer for a price. * * *" R.C. 1302.01(A)(11). A warranty implied under R.C. 1302.28 is not an "implied warranty in tort" as that concept of strict liability to the consumer is set forth in McDonald v. Ford Motor Co. (1975), 42 Ohio St. 2d 8, 10 [71 O.O.2d 4], and in Gast v. Sears Roebuck & Co. (1974), 39 Ohio St. 2d 29, 31. See, also, Temple v. Wean United, Inc. (1977), 50 Ohio St. 2d 317, fn. 1, at page 320 [4 O.O.3d 466].

grounds of strict liability.[2] Plaintiffs, on the other hand, contend that these instructions are valid because, in *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466], the Supreme Court "approved" Section 402A of 2 Restatement of Torts 2d,[3] in which sellers of chattels are made liable for

[2] The pertinent part of the court's jury instructions read as follows:

"Now, a second theory upon which the plaintiff claims a right to recover is based upon the contention that the defendant breached an implied warranty in providing him with an unreasonably dangerous chair, which was not fit for the ordinary purposes for which chairs are used and that this breach of warranty was the direct and proximate cause of his injuries.

"The attorneys have referred to this theory of liability as the strict liability theory.

"Now, the Court instructs you that the defendant, The Grand Finale, Incorporated, as the seller of goods and services, does impliedly warrant that the chair furnished to Mr. Busse for his use, while a customer at The Grand Finale Restaurant, is fit and safe for its intended use. If you find that plaintiff, Herman Busse, has established by a preponderance of the evidence, that the chair supplied to him was at that time in a defective condition and unreasonably dangerous to Mr. Busse, and that such defect proximately caused the said chair to collapse while being used for its intended purpose and that such defect proximately caused the injury complained of by the plaintiff, then you must find for the plaintiff on the issue of liability.

"Now defective condition, as I've used this term, means that the chair supplied by the defendant to Mr. Busse must be in a condition not contemplated by him and which would be unreasonably dangerous to him when he used it for its intended use.

"Unreasonably dangerous, as I've used the term here, means that the chair in question, which Mr. Busse sat upon, must have been dangerous to an extent beyond that which would be contemplated by an ordinary guest who used it with the ordinary knowledge common to the community as to the characteristics of chairs.

"I've used the phrase implied warranty. To warrant is simply to promise or give an assurance.

"And, in the context of this case, a warranty is a representation understood without being expressly stated that the chair in question was in good condition, free of defects and fit for the use intended.

"Now, on either theory upon which the plaintiff seeks to recover, that of negligence or of what the attorneys have referred to as strict liability, or, as I have referred to it as a breach of implied warranty, on either of these theories upon which the plaintiff seeks recovery, he must also prove, by a preponderance of the evidence, that what the defendant did or failed to do was the proximate cause of his injuries."

We note that the instruction mixes together the elements of implied warranty applicable to a sale of goods under R.C. 1302.28 with the elements of strict liability under Section 402A, 2 Restatement of Torts 2d 347. As pointed out in fn. 1, *supra,* an implied warranty under R.C. 1302.28 is not an "implied warranty in tort" as that concept of strict liability to the consumer is set forth in *McDonald* v. *Ford Motor Co., supra.* This aspect of the instructions *sub judice* is not, however, questioned by defendants, and we therefore do not base our conclusion on it. We will deem the claimed error to be that the gravamen of the instructions was that plaintiffs could recover on grounds of strict liability in tort.

[3] Section 402A, 2 Restatement of Torts 2d, 347-348, reads as follows:

"Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

physical harm to the user or consumer caused by a product sold in a defective condition that is unreasonably dangerous. If the doctrine of strict liability is applicable, the injured party need not prove the existence of either negligence or warranty. We do not agree that the doctrine is applicable to the instant case.

Plaintiffs were invitees on defendants' premises, and the long-established duty of the owner or operator of a place of business to his invitees is to exercise ordinary care to maintain the premises in a reasonably safe condition so that the invitees will not be unreasonably exposed to danger. *Parras* v. *Standard Oil Co.* (1953), 160 Ohio St. 315 [52 O.O. 206]; *S. S. Kresge Co.* v. *Fader* (1927), 116 Ohio St. 718. However, the occupier of business premises has traditionally not been held to be an insurer of the safety of his customers while they are on the premises. *Howard* v. *Rogers* (1969), 19 Ohio St. 2d 42 [48 O.O.2d 52].

Section 392 of 2 Restatement of Torts 2d[4] applies the same duty of reasonable care to one who supplies chattels to another to be used for the supplier's business. We believe that in supplying chairs and tables on its premises for use in the consumption of food sold to its customers, a restaurant operator owes a duty of reasonable care, and we are unwilling to raise the restaurant operator's duty to his business invitees with respect to chattels furnished in connection with the sale of food to one of strict liability.[5] Annotation, 76 A.L.R. 2d 1342.

Section 402A (2 Restatement of Torts 2d) is by its terms applicable to sellers of consumer products with unreasonably dangerous defects, not to operators of business premises. As noted in Comments *b* and *d,* this rule of liability is applicable to sellers of food for human consumption. The justification for strict liability, per Comment *c,* is that as a matter of public policy, the burden of accidental injuries caused by consumer products should be placed on those who market them, as a cost of business against which liability insurance may be purchased, thus giving the injured consumer the maximum of protection. An Ohio customer injured by

---

[4] Section 392, 2 Restatement of Torts 2d 319, reads as follows:

"Chattel Dangerous for Intended Use

"One who supplies to another, directly or . through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

"(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

"(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

[5] We are aware of *Albright* v. *Leonardt Trucking, Inc.* (Feb. 15, 1980), Crawford App. No. 3-78-13, unreported, in which that court held that strict liability applies to a trucking company for injuries received from a defective dolly-type landing gear, which supported a flatbed trailer, where the trucking company supplied the trailer with the defective landing gear to a customer so that the customer could load the trailer with the customer's products on the customer's premises prior to redelivering them to the trucking company for transportation to the purchasers of the products. That case may be distinguished from the instant case because there the supplier of the trailer with the defective landing gear was a common carrier who although he did not transfer title of the trailer to the customer, delivered possession of it exclusively to the customer, creating a bailment for mutual benefit, thus introducing the defective item into the "stream of commerce." Further, we are not persuaded that the doctrine of strict liability set forth in Section 402A (2 Restatement of Torts 2d) is to be extended to items that are not sold but merely furnished in connection with a sale of other items. See the Comments to Section 392, 2 Restatement of Torts 2d, 319 *et seq.*

adulterated food or deficient food service operations is given a comparably high degree of protection by R.C. Chapters 3715 and 3732, which require more than ordinary care of restaurant operators in the preparation and serving of food. The concurrent supplying of a place to eat the food including tables and chairs appears to us to be a separate matter, and no different in substance from the premises and related chattels furnished to customers by storekeepers and other retailers dealing directly with customers.

Our opinion is that the public is protected reasonably and within its expectations if the restaurant operator is under a duty of ordinary care to protect its customers against injury caused by its premises and the chattels used temporarily for the consumption of food. It was error to instruct the jury on strict liability. The defendants' first assignment of error has merit, and because the judgment below was based on strict liability, it must be reversed.

The defendants' three other assignments of error raise questions about the admission of evidence. These questions are rendered academic (moot) by our reversal of the judgment below without remand for further proceedings. We decline to rule on them. *Moncol* v. *Bd. of Edn.* (1978), 55 Ohio St. 2d 72, 79 [9 O.O.3d 75].

Turning to plaintiffs' claim that the trial court erred in overruling their motion for a directed verdict on the issue of negligence, we note that the chair in question was an antique, the manufacturer of which was unknown and the collapse of which was sudden and unexplained. The plaintiffs persuaded the court to proceed on the basis of the doctrine of *res ipsa loquitur*,[6] but failed to persuade the court to direct a verdict in their favor. We find no error as claimed by plaintiffs.

A verdict could have been directed for plaintiffs if the trial court, after considering the evidence most strongly in favor of the defendants, found that upon the determinative issue of negligence, reasonable minds could come only to the conclusion that the defendants were negligent. Civ. R. 50(A)(4). No court could properly come to such a conclusion in this case, in our opinion, because the defense testimony disclosed that all chairs were inspected for defects before they were placed in use, that they were strengthened or otherwise refurbished as might be found necessary, that all chairs were polished and inspected once every two weeks, and that the employees were ordered to report any perceived defects. Even with the permissible inference allowed under the doctrine of *res ipsa loquitur,* this evidence was sufficient to survive the motion for a directed verdict inasmuch as reasonable minds could differ about the defendants' alleged negligence.

Plaintiffs argue that, under *res ipsa loquitur,* they are entitled to a directed verdict because the inference of negligence was not rebutted. Plaintiffs misconstrue the doctrine. It does not create a presumption conclusively binding on the defendant if he fails to offer some explanation or rebuttal. It creates a permissible inference "* * * which merely gets the plaintiff to the jury. * * *" Prosser on Torts (4 Ed. 1971), Section 40, at page 231.

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence

---

[6] The applicability of the doctrine of *res ipsa loquitur* to the facts of this case was not raised by defendants and we do not rule on this question at this time. We note, however, that the doctrine has been applied to a saddle, a chair and a theater seat, items that were not strictly within the exclusive control of the defendant at the time of the injury. *Rafter* v. *Dubrock's Riding Academy* (1946), 75 Cal. App. 2d 621, 171 P. 2d 459; *Sweet* v. *Swangel* (Iowa 1969), 166 N.W.2d 776; *Fox* v. *Bronx Amusement Co.* (1918), 9 Ohio App. 426. See, also, Prosser on Torts (4 Ed. 1971), Section 39, at page 220.

warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. * * *" *Sweeney* v. *Erving* (1913), 228 U.S. 233, at page 240, cited with approval in *Fink* v. *New York Central RR. Co.* (1944), 144 Ohio St. 1, 8 [28 O.O. 550].

The plaintiffs' single assignment of error in their cross-appeal has no merit.

We reverse the judgment of the Court of Common Pleas of Hamilton County. Because we find no merit in the plaintiffs' claim for a directed verdict on negligence, we decline to remand the cause for further proceedings or to enter judgment on their behalf for damages. Because the jury determined the issue of negligence adversely to the plaintiffs, we render final judgment for the defendants, being the judgment that the trial court should have rendered. App. R. 12(B).

*Judgment reversed.*

SHANNON and PALMER, JJ., concur.