## Hoenigman v. McDonald's Corp.
### Case No. 56010
### Cuyahoga County, (8th)
### Decided January 11, 1990
[Cite as 1 AOA 249]

*For plaintiff-appellees:*
*Alfred J. Tolaro, Rockefeller Building, 614 West Superior Avenue, Suite 700, Cleveland, Ohio 44113-1300,*

*For defendant-appellants:*
*Jeffrey L. Tasse, Mansour, Gavin, Gerlack & Manos Co., L.P.A., 2150 Illuminating Building,*

*55 Public Square, Cleveland, Ohio 44113-1994.*

NAHRA, J.

Plaintiffs sought damages from a restaurant chain and its local franchisee for personal injuries sustained by a minor who fell while leaving the restaurant. At the close of plaintiffs' evidence and at the close of all evidence, the trial court denied defendants' motions for a directed verdict. The jury found the restaurant liable and assessed damages to be $7,415.42 for medical expenses and $14,400.00 for pain and suffering.

Defendants appeal claiming that the trial court erred by (1) not granting their motion for directed verdict and (2) entering judgment for plaintiffs since the verdict was clearly against the manifest weight of the evidence presented. We agree that a directed verdict should have been granted at the close of plaintiffs' case and that the judgment was clearly against the manifest weight of the evidence; therefore we reverse and enter judgment for defendants.

The trial transcript indicates that Jerome Hoenigman, minor son of Kathleen Hoenigman, entered McDonald's parking lot as a passenger in a friend's automobile on January 21, 1986 at approximately 7:30 a.m. The temperature was about 30 degrees fahrenheit. After the car was parked, Jerome walked without incident through the parking lot and entered McDonald's where he purchased two items. Carrying an item in each hand Jerome exited the restaurant from the same door from which he entered. Wearing tennis shoes, he walked outside and fell after taking about four steps, thereby injuring his ankle. Although he traversed the same path entering the restaurant, Jerome did not notice the patch of ice on which he fell.

Plaintiffs argued that the slip and fall resulted from an unnatural accumulation of snow and ice. The fall occurred close to an island on which snow was deposited after being plowed. The plaintiffs also argued that cars passing through the parking lot/drive-in created slush which accumulated and refroze into the patch of ice on which Jerome fell. Plaintiffs further asserted that an unnatural accumulation of ice was created by water dripping from the allegedly gutterless roof of the restaurant. Plaintiffs' final contention was that a nonnatural accumulation of ice formed as a result of an improperly working drain located near the patch of ice on which Jerome slipped.

Defendants' two assignments of error will be addressed together. They are:

I. THE COURT OF COMMON PLEAS ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF DEFENDANTS-APPELLANTS PURSUANT TO RULE 50 (A) OF THE OHIO RULES OF CIVIL PROCEDURE AT THE CLOSE OF PLAINTIFFS'-APPELLEES' CASE AS WELL AS AT THE END OF ALL EVIDENCE.

II. THE COURT OF COMMON PLEAS ERRED IN ENTERING JUDGMENT FOR THE PLAINTIFFS-APPELLEES SINCE SUCH DECISION WAS CLEARLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.

When considering a directed verdict motion, the trial court must construe the evidence most strongly in favor of the party against whom the motion is asserted. Civ. R. 50(A)(4). The court should not consider the weight of the evidence or the credibility of the witnesses. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 423 N.E. 2d 467.

Jerome was a business invitee for the defendant restaurant. This is not in dispute. Therefore, the restaurant owed him a duty to exercise reasonable care in making the premises safe for his use. *Perry* v. *Eastgreen Realty Co.* (1978), 53 Ohio St. 2d 51, 52-53, 372 N.E.2d 335; *Busse* v. *Grand Finale, Inc.* (1981), 3 Ohio App. 3d 65, 443 N.E. 2d 1011.

The restaurant's duty did not extend to protection against hazards from natural accumulations of ice and snow which are similar to surrounding conditions. *Debie* v. *Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St. 2d 38, 227 N.E.2d 603. *Sidle* v. *Humphrey* (1968), 13 Ohio St. 2d 45, paragraphs two and three of the syllabus, 233 N.E. 2d 589. Such conditions are so obvious that occupiers of premises may reasonably expect that a business invitee will discover them and protect against them. *Sidle*, 13 Ohio St. 2d at 48.

Ice and snow is not an unusual occurrence in Ohio during the winter months. The Supreme Court of Ohio has stated that:

[S]now and ice are part of wintertime life in Ohio. As we noted in *Norfolk* v. *Tuttle* (1906), 73 Ohio St. 242, 245, * * * [i]n a climate where the winter brings frequently recurring storms of snow and rain and sudden and extreme changes in temperature, those dangerous conditions

appear with frequency and suddenness which defy prevention and, usually, correction * * * . To hold that a liability results from these actions of the elements would be the affirmance of a duty which would often be impossible, and ordinarily impracticable to perform.

*Lopatcovich* v. *Tiffen* (1986), 28 Ohio St. 3d 204, 206-07, 503 N.E.2d 154. Therefore, in Ohio, as a general rule, no duty is owed, even to an invitee, to remove natural accumulations of ice and snow. If snow and ice is removed, one must use ordinary care in its removal. *Porter* v. *Miller* (1983), 13 Ohio App. 3d 93, 468 N.E.2d 134; *Kinkey* v. *Jewish Hospital Association* (1968), 16 Ohio App. 2d 93, 242 N.E.2d 352.

Plaintiffs contend that the patch of ice on which Jerome fell was an unnatural accumulation of ice and snow from a variety of sources. We agree with the Lucas County Court of Appeals when it stated that:

> "Unnatural" accumulation must refer to causes and factors other then the inclement weather conditions of low temperature, strong winds and drifting snow, i.e. to causes other than by the meteorological forces of nature. By definition, then, the "unnatural" is the man-made, the man-caused * * *.
> * * * [S]ince the build-up of snow and ice during winter is regarded as a natural phenomenon, the law requires, at the very least, some evidence of an intervening act by the landlord (or a property owner) that perpetuates or aggravates the pre-existing, hazardous presence of ice and snow.

*Porter* v. *Miller* (1983), 13 Ohio App. 3d 93, 95, 468 N.E.2d 134.

Notwithstanding four separate allegations of the origin of an unnatural accumulation of ice in defendants' parking lot on January 21, 1986, plaintiffs failed to produce any evidence to support those allegations. Plaintiffs maintained that a nonnatural accumulation of ice and snow was created because removal of snow from the restaurant parking lot was negligently done. There was no evidence of this. McDonald's manager at the time of the accident testified as to the restaurant's snow removal practices. The restaurant had a snow removal contract with an independent company which removed snow when there was an excess of two inches. The manager testified that there were less than two inches accumulated on the day of the accident. Furthermore he testified that he saw no ice in the parking lot, although there was a light snow covering. McDonald's had no general practice of salting the lot, but they did salt occasionally. On the day on which the accident occurred the parking lot was not salted.

Plaintiffs argued that excess snow from the snowplow was piled on an island located next to the drive-through area in the parking lot. The snow allegedly melted and refroze at the spot on which Jerome fell. In order to establish negligence with respect to snow removal in a commercial lot, expert testimony is required. *Bowins* v. *Euclid General Hospital* (1984), 20 Ohio App. 3d 29, 484 N.E.2d 203. However, plaintiffs failed to produce such expert testimony. Therefore, a finding that nonnatural accumulation of ice was formed as a result of negligent snow plowing was precluded.

Even absent expert testimony, the existence of snow deposited on an elevated island situated in defendants' parking lot/drive- through does not constitute negligence. After snow is removed from the surface of the parking lot, it must be disposed of. Snow must be placed somewhere. In this case, that place was the elevated island in the parking lot. This court has stated:

> The accumulation of ice and snow is a condition created by the elements, a natural hazard faced by anyone who would venture about the streets while such conditions exist . . . . Snow cannot be removed from the sidewalks without being put somewhere. *A certain natural run-off of water is to be expected.* Water freezes if the temperature drops too low. The removal of snow is not an act of negligence, *per se,* but an act of consideration for the safety of the public, generally, and of one's customers, in particular.
> . . . To create liability it must appear that negligence intervened, that the snow was disposed of in a negligent manner, or that the removal was negligently done, but it also must appear that the resulting risk of injury was substantially increased or a violation of the duty of due care, if not proximate cause, is not established.

*Ramsdorfer* v. *Standard Oil Co.* (March 22,

1973), Cuyahoga App. No. 31751, unreported, slip op. at 2 (emphasis added).

Here there is no evidence that the snow and/or ice was cleared negligently. In fact, Jerome testified that there was some snow when he traversed the parking lot, but that there was nothing unusual about the parking lot condition from other days. Even assuming *arguendo* that the snow was removed negligently, there is no evidence that the risk of injury was substantially increased from the risk associated with the natural accumulations of ice and snow during the winter months.

Plaintiffs further maintained that slush created by cars passing through the drive-in area forming ice constituted an unnatural accumulation. Yet, an alteration of the natural accumulation of ice and snow by cars travelling on the driveway does not render the natural accumulation of ice and snow an artificial condition. *See Owens* v. *Kemp* (Sept. 5, 1986), Lucas App No. L-85-341, unreported (the status of snow and ice as naturally accumulated on a driveway was not altered by the imprint of tire tracks). Slush is a natural phenomenon of changing weather conditions. The fact that vehicles contributed to the movement of the slush does not create a duty on the part of the property owner to remove it. Just as there is no duty requiring the property owner to remove ice and snow, there is no duty to remove slush.

Plaintiffs next contend that a nonnatural accumulation of ice was formed as a result of water that fell off of the restaurant's roof. Plaintiff asserted that the accumulation was nonnatural because the roof lacked gutters. In *Tyrell* v. *Investment Association* (1984), 16 Ohio App. 3d 47, 474 N.E.2d 621 water dripping form a defective canopy which formed ice was considered a nonnatural accumulation. However, in the case at bar, plaintiffs presented no evidence of a defective roof or gutters. In fact, the municipal inspector testified that the restaurant had gutters and complied with the local building code. Thus, water dripping form a non-defective roof with gutters to the ground which refreezes and forms ice does not constitute a nonnatural accumulation. Moreover, there was no evidence water from the roof caused the fall.

The preceding three contentions of plaintiffs all relate to the freeze and thaw cycle accompanying the winter climate in northeastern Ohio. Such a cycle remains a natural accumulation in the absence of evidence indicating the landowner or occupier's negligence.

Plaintiffs also contend that a catch basin and drain system below the roof and in close proximity to the location of the accident may have contributed to the formation of ice on which Jerome slipped and fell. However, the construction manager for McDonald's testified that the drainage system was not defective and in fact worked very well at the particular location.

The arguments that the ice on which Jerome fell was a nonnatural accumulation are purely speculative. There is no evidence that the defendant in any way contributed to the transformation of a natural accumulation of snow and ice to an unnatural one. "The failure to identify or explain the reason for a fall while a plaintiff is on property owned by a defendant precludes a finding that the defendant acted negligently." *Mines* v. *Russo's Stop & Shop* (Feb. 23, 1989), Cuyahoga App. No. 55073, unreported. Therefore, we find that a directed verdict for the defendants-appellants should have been granted and for these reasons the judgment was clearly against the manifest weight of the evidence.

The judgment of the trial court is reversed and judgment is hereby rendered for defendants.

This cause is reversed and judgment is hereby rendered for defendants for proceedings consistent with this opinion.

It is, therefore, considered that said appellants recover of said appellees their costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

JOSEPH J. NAHRA
JUDGE

KRUPANSKY, P.J., and DYKE, J., Concur.