COCHRAN, PLAINTIFF, *v.* DOWD OLDSMOBILE, INC., DEFENDANT.

Common Pleas Court, Cuyahoga County.

No. 721722.   Decided February 23, 1962.

*Messrs. Sindell, Sindell, Bourne, Markus & McElroy*, for plaintiff, Allan L. Cochran.

*Mr. Arthur J. Stern*, for defendant, Dowd Oldsmobile, Inc.

## APPENDIX A.

LYBARGER, J. This is the matter of the case of *Allan L. Cochran* v. *Dowd Oldsmobile, Incorporated.* The Court at this time is prepared to give the following statement of facts and conclusions of law:

The action comes into this Court by way of a petition filed by the plaintiff, in which he alleges that the defendant maintains an automobile sales room and service shop in the city of Cleveland Heights, and that the plant was so constructed as to provide an area which might be called a service room, where cars enter, are parked, arrangements made for servicing cars, and where on two racks cars may be lubricated.

He says that on or about the 1st day of March, which actually turned out to be about the 25th or 26th of February, he drove his car into the customers' parking area on the outside, entered the store, the garage, and inquired for the foreman of the body shop, commenced walking toward the customers' entrance in order to have his car examined by the manager of the body shop; that on his way back the foreman engaged him in conversation and distracted his attention.

As they were passing the lubrication lift which was six to eight inches above the floor, with sharp points of the parallel sections of the lift directly in the pathway over which defendant's agent led the plaintiff, they were engaged in conversation, and defendant's agent failed to warn him of the presence of the lift on the floor; that his left foot came in contact with the edge of the lift; that he fell forward on outstretched hands; his face came in contact with the cement floor and broke his glasses, jarring his head.

Then he says the defendant was negligent in four particulars as alleged in the petition. I shall not reiterate them for this purpose.

He says as the direct and proximate result of the negligence of the plaintiff, he was caused to suffer certain injuries and particularly a detachment of the retina of the right eye; that he was hospitalized therefor on two occasions; that he endured pain and suffering, medical treatment and hospitalization, incurred surgical and hospital expense—medical expense, I should say; cross out hospital; that was not proved.

He says that his health was good before this, but that he has been deprived completely of the use of his right eye.

He seeks judgment in the sum of $50,000.

The defendant answers, admits its corporate entity, admits it does maintain an auto sales shop and service area and body

repair shop, and so forth; admits that the plaintiff was its customer on or about the date alleged in the petition; but denies that defendant's foreman engaged plaintiff in conversation about repair work in a manner intended to distract plaintiff from the lubrication lift.

The defendant denies that it or any of its agents were negligent in any of the particulars charged by the plaintiff.

They say if plaintiff sustained any damage or injury, they were occasioned by the negligence and carelessness of the plaintiff in failing to observe the area in which he was walking and in failure to exercise ordinary care.

To this the plaintiff has filed a reply.

The issues in the case then are these:

Was the defendant negligent in any one or more of the respects as charged in the petition by reason of the facts alleged in the petition?

Second, if defendant was negligent, was such negligence a proximate cause of injury to the plaintiff?

Third, was the plaintiff himself contributorily negligent, so that his negligence, concurring with any negligence that might exist on the part of the defendant, would indicate a want of ordinary care on his part and therefore deprive him of the right to recover?

The Court has weighed carefully the testimony of all the witnesses in the case, and has observed that there are a number of inconsistencies and conflicts in the testimony.

From all of the testimony and the weighing of all of it, the Court decides that the following are the operative facts in the case:

On or about February 25, 1958, the plaintiff, Allan L. Cochran, entered the place of business of the defendant, Dowd Oldsmobile, Incorporated. At that time he was a man almost sixty-eight years of age and in good health. His eyesight was normal and corrected by the use of glasses particularly for reading.

He had been a patron of the defendant for ten or twelve years prior to 1958.

On the occasion in question he came to have a piece of molding replaced on his car. His capacity there was that of a business invitee.

He entered the northwest entrance of defendant's main area, which I shall call for convenience the service area, meaning by that the old part of the building, the central part, which we have identified quite adequately in the course of the trial.

He proceeded to the order desk, and asked for the man in charge of the body shop, whose name is Connie, and I shall use that name for convenience, although perhaps it would be better to use the last name. He was told that the latter could be reached in the body shop.

The plaintiff proceeded through the main service area to the door on the southwest wall which led to stairs going up to the body shop. Plaintiff found Connie, and with him proceeded to go back down the stairs and into the area from whence he had just come.

Along the westerly wall of the service area there were at that time and there are now two lube racks, and I shall use that term as a brief abbreviation for the lubrication racks or lifts with which this case is concerned.

There was a car on the northerly rack. The southerly rack was empty and was resting on the floor and extended up from it in height from four to six inches.

This rack was pointed in a southeasterly direction, meaning by that that it was not perpendicular to the westerly wall, and therefore the southerly branch of the rack extended out more in the central part of the garage than it did over in the westerly part closer to the wall.

The plaintiff had had his car lubricated in this area in times past, and he had walked in the area three or four times in the ten years preceding this incident. He knew the approximate locations of the objects in this area.

At the time in question there were cars parked close to the door leading to and from the body shop and within three feet of the south lube rack, the one with which we are here concerned.

Accompanied by the manager of the body shop, who was walking to plaintiff's right and a little ahead of him, plaintiff made his way from the door of the body shop stairway northerly and easterly to go out to his car, which was parked outside in front of the place of business. Thus the two men began to proceed through what I have called the service area.

The plaintiff explained to Connie that his purpose was to

show him the repairs which his car needed. He and Connie were talking together on this subject as they proceeded along. Their way lay alongside some parked cars just mentioned and close to the south lube rack, particularly to the southerly side thereof.

The plaintiff took a general view of the situation as he entered this area with Connie. He then went ahead, following along with Connie and perhaps a little back of him. He was unconscious of the rack on the floor. I should say he was not conscious of the rack on the floor; that would be better.

When he came to the southeasterly end of this rack, his left foot hit the bar of the lift. He fell flat, catching himself with his hands and wrists. He felt a decided jar of his head. His nose and the corner of his glasses hit the floor. Then the employes helped him to his feet. He said that he didn't know whether he was hurt, but he thought he was all right.

There were no yellow lines painted around the lube racks at this time. There may have been remnants of some white lines, but on the day of the accident they were not distinct enough for anybody to remember seeing them. There was no warning device around the racks, and the manager of the body shop did not warn plaintiff of any imminent danger.

After taking a general view of the situation, as mentioned above, plaintiff did not look again to the floor—look to the floor. His attention was directed to Connie. There were cars which may have obstructed the view of the rack, the south rack, from the place where plaintiff and Connie left the door from the body shop stairs, but there was nothing to obstruct plaintiff's vision or prevent his seeing the rack as he walked alongside of it.

From the testimony of the employes of the defendant it is established that the defendant knew that customers went around the lube racks to get to the body shop, and defendant's vice-president admitted knowing that there would be some danger to customers, and this he knew before the happening of this occurrence.

When lines were painted on the floor around the lube racks —and the Court is satisfied that this was done from time to time —the testimony of the defendant's employe is that it was done as a safety precaution, and defendant admitted it would be a good idea to have them bright in color.

The employe who was accompanying the plaintiff as he walked in the area of the lube rack testified that he, that is, the employe, was conscious of the rack so that he could avoid it and that he could have warned plaintiff, but he did not do so.

There was never a defined pathway for customers to go to and from the service area and the door leading up to the body shop, and customers had to make their way past the lube racks as best they could between or alongside of cars that were parked in the area.

Expert opinion differed as to the safety of the arrangement whereby customers had to pass the lube racks to get to the body shop. The greater weight of the testimony establishes that it was unreasonable to place a traffic pattern in close proximity to the lube racks, and that the addition of a reasonably high cheek wall or the use of stanchions and chains as a warning to customers would have been a reasonable and proper means of maintaining the area and warning invitees of it.

In making this finding, the Court has in mind that the expert for the defendant testified that while the arrangement of the lube racks was not ideal, it was typical of older garages, and that a better arrangement could be had, but he did not think it was necessary. He admitted that circulation of customers was not as free as if the area had been kept clear and open to them.

Returning to plaintiff's physical condition, the evidence establishes that some time after the accident he began to have difficulty with his right eye. Upon medical examination it was revealed that he suffered from a retinal detachment thereof.

He was hospitalized the first time for about a month, the second time for about two weeks, but without remedial results. The retina remains detached, and he has lost the total sight of his right eye.

Since the accident he has developed glaucoma of the left eye, but there is no causal relationship between the fall which he suffered and the retinal detachment in the right eye, on the one hand, and the glaucoma which has developed in the left eye, on the other hand.

In this case, we start with the proposition that plaintiff was a business visitor to the automobile shop of the defendant. In the sight of the law, therefore, he was an invitee.

It is the law that an owner or occupant of lands or buildings who directly or by implication invites or induces others to go thereon or therein, owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed defects of which he knows. Of course, the owner is not an insurer of the safety of an invitee, and in the absence of negligence there is no liability.

The duty to keep premises safe for invitees extends to all of the operations of the premises which are included within the invitation and which it is necessary or convenient for the invitee to visit or use in the course of business for which the invitation was extended or at which his presence should therefore reasonably be anticipated or to which he is allowed to go.

An invitation to enter premises carries with it the duty toward the persons invited to provide reasonably safe means of ingress and egress and to provide reasonably safe passages to and from such places as are included within the scope of the invitation.

It is true as a matter of law that the invitee assumes all normal, obvious or ordinary risks attendant on the use of the premises.

The basis of the invitor's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger. In order to impose liability for injury to an invitee, the dangerous condition must have been known to the owner or occupant or have existed for such time that it was his duty in the exercise of ordinary care to know of it.

The law says that the owner or occupier of premises has the duty to inform the invitee of hazardous conditions of the premises not obvious to the invitee.

What ought to be done in the exercise of ordinary care to protect an invitee is fixed by a standard of reasonable prudence. Of course, one who complains of injury is charged with the duty of using ordinary care to insure his own safety.

Passing on the legal implications of the facts in the instant case, the Court finds that the defendant was negligent in two respects:

First, in not maintaining either any barricades or any lines

of warning around the lube racks to apprise invitees of their presence when, as defendant admits, it knew that the area was potentially dangerous. If any warning lines were from time to time placed around the area, the Court is satisfied they were not of such a character as to serve any useful purpose on the occasion here in question.

Second, the defendant was negligent in not warning plaintiff of the presence of the racks when, through its employe, it had ample reason to do so.

The manager of the body shop was walking a little to the front of plaintiff and to his right. He daily walked past the rack. On this occasion he was talking to the plaintiff, who was closer to the rack, the point of which on one side was placed at such an angle that it lay southeasterly, that is, it was closer to the line of walk followed by plaintiff and Connie at the point where plaintiff fell than it was further west where the two men started to walk toward the center of the building. A timely word of warning from defendant's employe at this point would have avoided plaintiff's accident.

It is the law that plaintiff cannot recover if he was contributorily negligent. He had been past this rack before. Did he fail to use ordinary care for his own safety to avoid the fall at this time?

As trier of the facts, the Court finds that he was in the exercise of ordinary care at the time he fell, for these reasons: As he entered the area, coming with Connie from the body shop stair door, he did look in a general way toward the direction in which he was proceeding, but he was engaged in a conversation with Connie about the business which had brought him there that day. The defendant's employe was talking to him and plaintiff to the employe. His attention was directed toward Connie and was distracted from the floor where the lube rack lay.

Under these circumstances the Court cannot find that he failed to use ordinary care.

For the above reasons, the Court finds for the plaintiff and renders judgment in the sum of $10,000.