TYRRELL ET AL., APPELLANTS, *v.* INVESTMENT ASSOCIATES, INC. ET AL., APPELLEES.

(No. 47025—Decided March 20, 1984.)

*Mr. Curt E. Stern,* for appellants.

*Mr. William J. Coyne,* for appellee Norwood Drug, Inc.

*Mr. Timothy T. Reid,* for appellee Investment Assoc., Inc.

MARKUS, J. Plaintiff-customer sought damages from a drug store-tenant and the building owner for personal injuries sustained in a fall while leaving the drug store. At the close of the evidence, the court directed a verdict dismissing the drug store. The jury found the plaintiff-customer and the building owner equally at fault for causing plaintiff's injuries, which they assessed at $11,000. Accordingly, the court entered a judgment of $5,500 for the plaintiff-customer and against the building owner.

Plaintiff appeals, claiming that the trial court erred by (1) granting the drug store's motion for a directed verdict and (2) submitting the issue of comparative negligence to the jury. The first conten-

tion has merit, so we remand for a retrial of the case against the drug store.

Plaintiff has supplied a partial transcript of the trial pursuant to App. R. 9(B). It indicates that plaintiff drove to the defendant drug store to purchase lottery tickets on January 31, 1981 at approximately 6:30 p.m. He parked across the street from the one-story brick building that housed a row of businesses, including the drug store. He crossed the street and walked toward the drug store on the eighteen-foot wide public sidewalk in front of the building. To shield himself from the cold wind, he travelled close to the building.

It was dark then, but street lights and lights inside the store illuminated the area in front of the drug store. Side-by-side glass doors provided the entrance and exit for the drug store's customers. Plaintiff entered the store through the entrance door without incident and made his purchase.

Plaintiff left the store through the exit door. It opened outward onto the public sidewalk. A few steps outside the doorway while trying to pass around the open door, plaintiff fell forward injuring his face, shoulder and knee.

Plaintiff testified that after he fell, he noticed a transparent patch of ice on the sidewalk approximately one and one-half to two feet in diameter. Except for this patch, the sidewalk was dry and clear. Although plaintiff had walked past the ice on his way into the store, he did not notice it at that time.

After his fall, plaintiff reentered the drug store, where the store's pharmacist assisted him. The pharmacist told plaintiff that the store occasionally had problems with melting snow and rain dripping onto that area from the building's canopy. This permanent canopy attached to the building's front wall and extended five feet over the sidewalk from that wall for the building's entire length.

Nine days later, plaintiff returned to the drug store with his attorney. He then noticed that the canopy's underside was damaged and discolored directly above the sidewalk area where he saw the ice patch after he fell. Photographs of the canopy's condition at that later visit were admitted as evidence.

Plaintiff argued that a defect in the flat canopy allowed melting snow and water to drip from the far edge of the canopy onto the sidewalk. When the temperature dropped, the accumulated water produced a hazardous icy patch on an otherwise dry sidewalk.

The pharmacist testified that he was working at the store on the evening that plaintiff fell. When the plaintiff reported his fall, the pharmacist saw the icy patch under the canopy edge and put rock salt on it. He had been aware for several years that water occasionally dripped from the edge of the canopy and formed ice in front of his store. However, that condition was not unique to his storefront area.

During the winter months, the pharmacist or his employees regularly shovelled and salted the sidewalk in front of the drug store. He testified that the sidewalk in front of the store was generally dry and clear. He was not aware of any ice there on the evening plaintiff fell, until plaintiff reported his fall.

Plaintiff called a roofer as an expert witness about defects in the building's canopy. The roofer said the canopy's design and construction accumulated moisture and failed to divert it properly, so it dripped onto the sidewalk. He said that the canopy condition observed nine days after plaintiff's fall had existed before the fall and demonstrated the described defect.

I

Plaintiff's first assigned error contends:

"1. The Common Pleas Court erred

in directing a verdict in favor of Defendant Norwood Drug, Inc."

When considering a directed verdict motion, the trial court must construe the evidence most strongly in favor of the party against whom the motion is asserted. Civ. R. 50(A)(4). The court should not consider the weight of the evidence or the credibility of the witnesses. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284 [21 O.O.3d 177].

Plaintiff was a business invitee for the defendant drug store. Therefore, the store owed him a duty to exercise reasonable care in making the premises safe for his use. *Perry* v. *Eastgreen Realty Co.* (1978), 53 Ohio St. 2d 51, 52-53 [7 O.O.3d 130]; *Busse* v. *Grand Finale, Inc.* (1981), 3 Ohio App. 3d 65, 68. That duty included responsibility for due care in providing a reasonably safe ingress and egress. *Ingalls* v. *Western Reserve Univ.* (App. 1951), 61 Ohio Law Abs. 1, 2; *Cochran* v. *Dowd Oldsmobile, Inc.* (C.P. 1962), 91 Ohio Law Abs. 247, 254. See Prosser, Law of Torts (4 Ed. 1971) 391, Section 61.

The store's duty did not extend to protection against hazards from natural accumulations of ice and snow similar to surrounding conditions. *Debie* v. *Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St. 2d 38 [40 O.O.2d 52], paragraphs one and two of the syllabus. *Sidle* v. *Humphrey* (1968), 13 Ohio St. 2d 45 [42 O.O.2d 96], paragraphs two and three of the syllabus. Such conditions are so obvious that an occupier of premises may reasonably expect a business invitee will discover them and protect himself against them. *Id.* However, this plaintiff's evidence described ice formed by nonnatural accumulations in an area which differed markedly from surrounding conditions.

The drug store's employees did not create the described hazard. Thus, the store had no related duty unless its employees knew or should have known about its existence. *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29, 32 [65 O.O.2d 129]; *Keister* v. *Park Centre Lanes* (1981), 3 Ohio App. 3d 19, 24. The building owner was generally responsible for the condition of the building canopy which extended over the public sidewalk. Cf. *Prendergast* v. *Ginsburg* (1928), 119 Ohio St. 360, 364-365; *Young* v. *Mager* (1974), 41 Ohio App. 2d 60 [70 O.O.2d 59]. The drug store's duty involved protection of its business invitees using that common area for ingress or egress.

There was no evidence that the drug store employees knew about the specific icy patch where plaintiff reportedly fell before the fall occurred. However, there was evidence that the employees knew about the hazard from the dripping canopy which periodically created that condition. The drug store was in a better position to foresee and prevent the resulting hazard than its business invitees. Therefore, the jury could reasonably find that the drug store failed to exercise reasonable care for its customers' safety. Cf. *Yahn* v. *Mahoning Natl. Bank* (1982), 4 Ohio App. 3d 172, 174. With knowledge about canopy and weather conditions that produced such nonnatural icy patches, their reasonable care might include use of rock salt or other safety procedures.

We are mindful of decisions which precede the appellate rules and hold that a directed verdict cannot be challenged without a complete transcript. *E.g., Regan* v. *McHugh* (1908), 78 Ohio St. 326, paragraph one of the syllabus; *Cleveland Ry.* v. *Kukucz* (1929), 121 Ohio St. 468, syllabus. *Harrington* v. *Dodge* (1964), 120 Ohio App. 182, 184-185 [28 O.O.2d 459]. App. R. 9(B) now makes clear that a transcript of all evidence relevant to challenged findings or conclusions is necessary when the appellant contends: (1) they are contrary to the weight of the evidence, or (2) they are unsupported by the evidence. The

same rule allows the appellee to supply additional transcript if he deems it necessary.

The appellant has the burden of providing a record by transcript or otherwise which exemplifies the claimed error. The appellee has no burden to supply additional portions of the record unless he seeks to show an alternative ground for affirmance. *Goss* v. *Cincinnati Ins. Co.* (Sept. 12, 1983), Cuyahoga App. No. 46386, unreported.

In this case, the record contains sufficient evidence from which a reasonable jury could find against the defendant drug store. Therefore, plaintiff has demonstrated the alleged error in directing a verdict for that defendant. Since plaintiff's record includes admissions by that defendant's officer and employee, we have difficulty in perceiving how additional portions of the record would alter that result. The drug store's counsel does not refer to any such controlling evidence in his brief.

We will presume the regularity of trial proceedings when the record fails to demonstrate any claimed error. We will not speculate that a demonstrated error was remedied or rendered moot by part of the record which neither party chose to supply, unless the asserted error rests on the totality of the evidence.

Plaintiff's first assigned error is sustained.

## II

Plaintiff's second assigned error asserts:

"2. The Common Pleas Court erred in submitting to the jury an issue of contributory negligence (comparative negligence) of the Plaintiff Ralph M. Tyrrell."

Plaintiff contends there was no evidence from which reasonable minds could find he was negligent. Therefore, he argues that the court erred by instructing the jury on that subject over his objection. If the issue of contributory negligence was raised by the pleadings and supported by *some* evidence, the trial court did not err by giving that instruction. Cf. *Schnacke* v. *Montanya* (July 10, 1980), Cuyahoga App. No. 41065, unreported, at 4.

In this case, there was evidence that plaintiff followed approximately the same route into and out of the drug store. The jury could find that he lacked due care by failing to observe the ice when he passed it so he could use appropriate caution on his return. Cf. *Raflo* v. *Losantiville Country Club* (1973), 34 Ohio St. 2d 1 [63 O.O.2d 1]. Further, the jury could find he should have exercised greater care in watching and walking as he left the store. Cf. *Grossnickle* v. *Germantown* (1965), 3 Ohio St. 2d 96 [32 O.O.2d 65], paragraph three of the syllabus; *Moore* v. *Geiger* (1966), 6 Ohio App. 2d 14, 20 [35 O.O.2d 24]. In addition, there was evidence that plaintiff's knee was weakened and potentially unstable from a previous injury, so due care required commensurate caution. Cf. *Columbus Ry. P. & L. Co.* v. *Brady* (App. 1925), 3 Ohio Law Abs. 291.

The court correctly submitted the issue of comparative negligence for the jury's determination. Plaintiff's second assigned error is overruled.

Accordingly, the trial court's judgment on plaintiff's claim against the defendant building owner (Investment Associates, Inc.) is affirmed. The judgment dismissing plaintiff's claim against the drug store (Norwood Drug, Inc.) is reversed and remanded for retrial. Since the court directed a verdict for the drug store after all evidence had been received, the retrial should be limited to that defendant's liability. The plaintiff is bound by the first trial's determination of the total damages and his contributory fault under collateral estoppel principles.

*Judgment affirmed in part and reversed in part and cause remanded.*

CORRIGAN, P.J., concurs.

PATTON, J., dissents.

PATTON, J. I must respectfully dissent from the position reached by the majority concerning its disposition of appellants' first assigned error. It is my considered opinion, as will be discussed more fully below, that the trial court properly directed a verdict in favor of the defendant drug store, as no evidence was presented to establish the defendant's actual or constructive notice of the icy condition of the sidewalk.

The duty of ordinary care to insure the safety of invitees where the injury arises from a "slip and fall" due to a hazardous condition not created by the proprietor or his employees is well established. To permit an injured party recovery in such instances, the plaintiff must show that the defendant had, or in the exercise of ordinary care should have had, notice of the hazard for a sufficient time to enable him, in the exercise of ordinary care, to remove such hazard, or warn patrons about it. *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29 [65 O.O.2d 129], citing *Anaple* v. *Standard Oil Co.* (1955), 162 Ohio St. 537 [55 O.O. 424]; *Johnson* v. *Wagner Provision Co.* (1943), 141 Ohio St. 584 [26 O.O. 161]; *Keister* v. *Park Centre Lanes* (1981), 3 Ohio App. 3d 19.

In reviewing the record *sub judice*, it clearly appears that the defendant had no notice of the icy condition of the sidewalk on the evening that Tyrrell sustained his fall. Further, though testimony exists to establish that the drug store employees knew about the dripping condition of the awning, the appellants failed to establish that on the date in question, the employees knew that the awning was dripping or that the temperature had dropped, thereby imputing the defendant with constructive notice of the slippery condition of the sidewalk.

The drug store's duty toward its business invitees required its maintenance of a safe ingress and egress. Contrary to the long-established law requiring a finding of notice, either actual or constructive, of the hazard, prior to finding a breach of the storekeeper's duty toward its patrons, the majority has chosen to modify this rule to now place an absolute liability upon a shopkeeper for *any* injuries which are remotely foreseeable, without first requiring a finding that the defendant had knowledge or should have had knowledge of the actual hazard. I find this extension of liability to be in conflict with the law of Ohio on this subject, and further, to place an unfair burden upon the shopkeeper to protect against any and all remotely foreseeable injuries, regardless of whether or not he knows of an actual hazard. This extension of liability is untenable and I must, therefore, respectfully dissent.