DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal and cross-appeal from a judgment of the Erie County Court of Common Pleas, entered after a jury found for plaintiffs-appellees/cross-appellants, Jarrett M. and Carol Abraham (appellees), in their action against defendant-appellant/cross-appellee, Werner Enterprises (appellant), for negligence and loss of consortium. From that judgment, appellant has raised the following assignments of error:
 {¶ 2} "I. The trial court erred in failing to provide a comparative negligence instruction to the jury.
 {¶ 3} "II. The trial court erred in allowing the opinion testimony of UPS employee, Ron Gawur.
 {¶ 4} "III. The trial court erred in allowing the deposition testimony of Duane Henn to be submitted to the jury.
 {¶ 5} "IV. The trial court erred in allowing evidence of an out-of-court declarant (Dave Barley, Benoit, Wisconsin) to be presented to the jury."
 {¶ 6} Appellees have raised an additional assignment of error:
 {¶ 7} "The trial court abused its sound discretion in denying plaintiffs-appellees' motion for prejudgment interest."
 {¶ 8} On January 25, 1994, Abraham, a driver for United Parcel Service ("UPS"), was injured as a result of an accident on the Ohio Turnpike after he drove his tractor trailer into the median to avoid colliding with a jackknifed truck owned by appellant. On January 10, 1996, appellees filed an action against appellant in the lower court alleging negligence and loss of consortium. In its answer, appellant asserted in pertinent part that Abraham was contributorily negligent in causing his own injuries. Immediately prior to the start of the trial, appellees filed motions to use the deposition testimony of witnesses, Duane Henn and Ronald Gawur, at trial. Appellees asserted that Gawur was unavailable to testify at trial and that Henn's deposition testimony was admissible pursuant to Civ.R. 32(A)(2), which permits the use of depositions in court proceedings for various purposes. During the course of the trial, the court permitted the depositions to be read into the record over appellant's objections.
 {¶ 9} Evidence submitted at the trial below revealed the following facts. At approximately 8:30 p.m. on January 25, 1994, Abraham was driving his usual route from Toledo, Ohio to Middleburg Heights, Ohio along the Ohio Turnpike, hauling two 28 foot trailers and a dolley. As Abraham proceeded eastbound, the weather conditions worsened with snow and gusting winds. Abraham was driving in the right hand lane between 34 and 37 m.p.h. Between mile markers 116 and 117, a 53 foot Werner Enterprises truck, driven by Tolby Compton, passed Abraham in the left hand lane, followed by three cars. As the third car passed Abraham, Abraham saw the Werner Enterprises truck begin to wiggle. Abraham testified that upon seeing the Werner truck wiggle, he "had an idea he was going to lose it." The Werner truck then began to jackknife. Abraham then tapped his brakes but he too began to slide. The three cars between the two trucks also hit their brakes and were able to stop without hitting the Werner truck. As Abraham saw the Werner truck begin to jackknife, he realized that he could not stop his truck. The Werner truck came to rest across both east bound lanes of the turnpike and Abraham, in order to avoid hitting the Werner truck or the three cars between the two trucks, drove his truck into the median ditch. After Abraham's truck came to rest, he felt pain in his right shoulder.
 {¶ 10} After the accident, Abraham spoke to Sergeant Frank Nedveski of the Ohio State Highway Patrol. Abraham began to fill out an accident report but could not complete the report because of the pain in his shoulder. Abraham was then transported to the hospital for medical care. Abraham subsequently underwent surgery and physical therapy as a result of the shoulder injury sustained in the accident. He did not return to work until September 1994.
 {¶ 11} Both Abraham and Compton were issued citations for the accidents. Sergeant Nedveski testified that in his view, there were two separate accidents because the trucks did not make contact. Compton was cited for driving at an unsafe speed for the conditions, a violation of R.C. 4511.21(A), and Abraham was cited for failure to control his vehicle, a violation of R.C. 4511.202. Abraham, however, was not convicted of failure to control. Nevertheless, Abraham agreed that he had a duty to maintain an assured clear distance and that as cars and trucks passed him, he had a duty to adjust his driving accordingly, based on the size of his truck and the weather conditions, to avoid hitting vehicles ahead of him if they stopped suddenly.
 {¶ 12} After a UPS internal investigation, Abraham did not receive any disciplinary action as a result of his driving. Ronald Gawur, the former transportation services manager for UPS, investigated the accident for UPS and determined that in UPS's view, the accident was unavoidable; that is, that Abraham took every reasonable caution to avoid the accident. Gawur stated, however, that chargeability in the eyes of the law, and avoidability in the eyes of UPS were two different standards.
 {¶ 13} In contrast, an internal investigation undertaken by Werner resulted in Compton's receiving counseling and being placed on probation for 120 days. Duane Henn, Werner's vice president for safety, testified that the Werner internal investigation determined that Compton did not exercise every reasonable precaution to avoid the accident. Henn further testified, however, that he did not believe that the Compton and Abraham accidents were related in that the Ohio State Highway Patrol treated them as two separate accidents.
 {¶ 14} After the parties had submitted their evidence and closing arguments, the lower court instructed the jury as to the law applicable to the case. In pertinent part, the court instructed the jury on intervening and superseding causes, sudden emergencies and legal excuses, unavoidable accidents and assured clear distance. Over appellant's objection, however, the court did not instruct the jury on comparative negligence.
 {¶ 15} At the conclusion of the trial, the jury returned a verdict in favor of Abraham, awarding him compensatory damages of $65,000. The jury also awarded Carol Abraham damages of $10,000 for loss of consortium. It is from that judgment that Werner now appeals.
 {¶ 16} Appellant's first assignment of error challenges the trial court's denial of Werner's request to instruct the jury on contributory negligence. Appellant asserts that because Abraham was negligent per se in that he was cited for failure to control his vehicle, appellant was entitled to an instruction on contributory negligence. Abraham counters that although he was cited for failure to control, he was not convicted of that offense and that appellant did not produce any evidence at the trial below to support a finding that Abraham was negligent in any manner.
 {¶ 17} The purpose of a jury charge is to clearly and concisely state the principles of law necessary for the jury to accomplish the purpose desired. Cleveland Elec. Illum. Co. v. Astorhurst Land Co.
(1985), 18 Ohio St.3d 268, 272. "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake Cty. Mem. Hosp. West (1990),53 Ohio St.3d 202, 208. The decision to include or exclude a particular instruction is generally within the sound discretion of the trial court.Cabe v. Lunich (1994), 70 Ohio St.3d 598, 602.
 {¶ 18} To maintain an action in negligence, a plaintiff must show that the defendant owed the plaintiff a duty of care and breached that duty, which proximately caused injury to the plaintiff. Mussivand v.David (1989), 45 Ohio St.3d 314, 318. Negligence in a motor vehicle case is the failure to exercise ordinary care to avoid injury to others.McDonald v. Lanius (Oct. 28, 1993), Marion App. No. 9-93-23. Ordinary care is a degree of care that an ordinarily reasonable and prudent person exercises, or is accustomed to exercising under the same or similar circumstances. Mussivand, supra at 318. The degree of care required of a motorist is controlled by and depends on the place, circumstances, surroundings and conditions. McDonald, supra.
 {¶ 19} It is well-settled law in Ohio that the issue of proximate cause is a question of fact to be determined by the trier-of-fact.Hitchens v. Hahn (1985), 17 Ohio St.3d 212, 214. It is further well-settled that "[n]egligence per se does not equal liability per se. Simply because the law may presume negligence from a person's violation of a statute or rule does not mean that the law presumes that such negligence was the proximate cause of the harm inflicted." MerchantsMut. Ins. Co. v. Baker (1984), 15 Ohio St.3d 316, 318. The principles of comparative negligence are applicable to all negligence actions tried after the effective date of R.C. 2315.19, that date being June 20, 1980.Wilfong v. Batdorf (1983), 6 Ohio St.3d 100, paragraph three of the syllabus. Under the comparative negligence statute, the totality of causal negligence is to be examined, and is a question to be submitted to the jury whose duty it is to apportion that negligence. Anderson v.Ceccardi (1983), 6 Ohio St.3d 110, 115. Thus, even a defendant who has been deemed negligent per se can raise the affirmative defense of contributory negligence.
 {¶ 20} It is well established that a trial court will not instruct the jury on an issue where there is no evidence to support it. Murphy v.Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. If, however, an issue is properly raised in the pleadings and is supported by some evidence at the trial, the requested instruction on that issue should be given. Id.;Tyrrell v. Investment Assoc., Inc. (1984), 16 Ohio App.3d 47, 50.
 {¶ 21} Upon a review of the record, we conclude that there was some evidence submitted at the trial below from which a reasonable jury could conclude that Abraham was contributorily negligent. Abraham testified that when he began to apply his brakes upon seeing the Werner truck wiggle, he too began to skid. It is unclear from the evidence how far Abraham's truck was from the Werner truck when the latter began to jackknife. From this, a reasonable jury could conclude that Abraham was not exercising the ordinary care that a reasonably prudent person would have exercised under the same or similar conditions and, as such, that he was partially responsible for his injuries. By instructing the jury as it did, the court did not allow the jury to determine if there was any shared responsibility for Abraham's accident.
 {¶ 22} We therefore conclude that the trial court abused its discretion in failing to instruct the jury on contributory negligence and the first assignment of error is well-taken.
 {¶ 23} Appellant's second and fourth assignments of error are interrelated and will be considered together. Both assignments of error concern the testimony of Ron Gawur, the former transportation services manager for UPS. Gawur investigated the accident for UPS and determined that in UPS's view, the accident was unavoidable. He then submitted his findings to UPS in an Accident Prevention Report. Gawur testified that he based his report on information he gathered from Abraham himself; from Dave Barley, a witness to the accident who called UPS shortly after the accident to commend Abraham's evasive maneuver; and from data taken from a device called a tacograph, which was on Abraham's UPS truck and which registered critical data at the time of the accident. Appellant objected to this testimony on the ground that it was inadmissible hearsay and amounted to expert testimony on an ultimate issue given by a non-expert. The court, however, permitted the testimony.
 {¶ 24} We first note that the admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180. In order to find an abuse of discretion we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 25} Werner primarily challenges the court's decision to allow Gawur to testify regarding information he learned from Dave Barley. Gawur testified that the day after the accident, Dave Barley from Benoit, Wisconsin, telephoned him to share with Gawur his views about the accident. Gawur testified that based on that conversation, as well as information learned from Abraham and the tacograph, Gawur concluded that the accident was unavoidable. Gawur testified, however, that with regard to Barley he had no knowledge of where Barley was in relation to the accident, whether he witnessed the accident or came upon it from behind.
 {¶ 26} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible into evidence except under specifically delineated circumstances. Evid.R. 802. Appellee concedes that Gawur's statements regarding his conversation with Barley were hearsay, but asserts that Barley's statements were admissible as a present sense impression. Pursuant to Evid.R. 803(1), "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness" are not excluded by the hearsay rule. "The principle underlying this hearsay exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness. The key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived — a fact which obviously detracts from the statement's trustworthiness." Cox v. Oliver MachineryCo. (1987), 41 Ohio App.3d 28, 35-36. Gawur's conversations with Barley took place the day after Abraham's accident and approximately one week later. In our view, they were too far removed from the scene of the accident to bear the high degree of trustworthiness critical to present sense impressions. The trial court, therefore, abused its discretion in allowing Gawur to testify regarding the content of his conversations with Barley.
 {¶ 27} Werner further asserts that the trial court erred in allowing Gawur to present opinion testimony when appellee had not presented Gawur as an expert witness. Appellant contends that by allowing Gawur to testify that Abraham acted in an appropriate manner and that his accident was unavoidable pursuant to UPS guidelines, the court allowed Gawur to testify on the ultimate issues in the case.
 {¶ 28} Evid.R. 702 governs the admission of expert testimony and reads in relevant part: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information." Gawur did not qualify as an expert pursuant to this standard. Nevertheless, as a lay witness, Gawur could give opinion testimony that was "(1) rationally based on the perceptions of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid.R. 701. Gawur's testimony that Abraham's accident was unavoidable, however, was not rationally based on his own perceptions. He did not witness the accident or view the accident scene. Rather, Gawur collected information from various sources, including Abraham, the tacograph, and David Barley, and based his opinion on these sources. As we state above, the trial court improperly allowed Gawur to testify regarding information he learned from Barley. Accordingly, the trial court erred in permitting Gawur to testify that Abraham's accident was unavoidable. Although that opinion specifically related to UPS's view of the accident for purposes of Abraham's employment record, it was tantamount to testimony offered for the truth of the matter asserted, that is, the proximate cause of Abraham's injuries. Although ultimate issue testimony is not per se inadmissible, Evid.R. 704, to be admissible, it must "be helpful to, or assist, the trier of the fact in the determination of a factual issue. * * * The competency of the trier of the fact to resolve the factual issue determines whether or not the opinion testimony is of assistance." Staff Note to Evid.R. 704. Gawur's testimony was not helpful in determining a fact in issue. Gawur's knowledge of the accident was learned from other sources, he was not an expert in accident reconstruction, and he did not observe the accident or accident scent. Accordingly, the trial court erred in permitting Gawur to testify that Abraham's accident was unavoidable. See Scott v. Yates (1994), 71 Ohio St.3d 219.
 {¶ 29} Appellee counters that Gawur's testimony was admissible pursuant to Evid.R. 803(6). That is the rule under which the trial court permitted the testimony. Under Evid.R. 803(6), certain business records are not excluded by the hearsay rule if they report "* * * acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the * * * report [or] record, * * * all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." This exception to the hearsay rule, however, only addresses the admissibility of actual reports and records created and kept in the course of a regularly conducted business activity. The record before us reveals that the report upon which Gawur testified, was never entered into evidence. Gawur's testimony was submitted to the court through a trial deposition. That deposition was read into the record at the trial below with the court ruling on objections. The report is attached to that deposition, but at the conclusion of the trial when the parties reviewed the exhibits that were being admitted into evidence, the report was not discussed. Indeed, it is not listed at the beginning of the trial transcript as having been admitted into evidence. Accordingly, the trial court mistakenly relied on Evid.R. 803(6) in approving Gawur's testimony.
 {¶ 30} Assuming arguendo that the report was admitted into evidence, Evid.R. 803(6) "requires that the source of information be `a person with knowledge.'" Cox supra at 36. Although Gawur authored the report and had knowledge of its contents, the report was based on the statements of others. Gawur had no personal knowledge of the events of Abraham's accident. The second and fourth assignments of error are therefore well-taken.
 {¶ 31} Werner's third and final assignment of error challenges the trial court's decision to allow the deposition testimony of Duane Henn to be read at the trial below. It is undisputed that Henn, Werner's vice-president for safety, lives in Omaha, Nebraska. On October 12, 2001, Abraham subpoenaed Henn to appear at trial on October 24, 2001. That subpoena was mailed to Henn's Nebraska address. Subsequently, on October 22, 2001, Abraham filed a motion to compel Henn's trial appearance. Counsel for Abraham asserted that based on a telephone conversation he had with Werner's counsel, he believed that Henn would not appear for trial pursuant to the subpoena. In the alternative, Abraham requested that the court permit Henn's deposition testimony to be read into the record at trial. On the first day of trial, Abraham filed an application to use the deposition testimony of Henn at trial pursuant to Civ.R. 32(A). The court permitted the deposition to be read at trial, finding that appellee had made a good faith effort to procure Henn's testimony and that Henn was unavailable pursuant to Evid.R. 804(A)(5). Werner now asserts that the trial court abused its discretion in allowing Henn's deposition testimony to be read at trial because appellee did not undertake all reasonable means to procure Henn's attendance at trial.
 {¶ 32} Civ.R. 32(A) provides in relevant part that at a trial a deposition "may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any one of the following provisions: * * * (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * (b) that the witness is beyond the subpoena power of the court in which the action is pending or resides outside of the county in which the action is pending unless it appears that the absence of the witness was procured by the party offering the deposition; * * * or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena [.]" The rule does not reference Evid.R. 804(A)(5) or in any way require that the court make a finding of unavailabilty before permitting a deposition that meets the requirements of Civ.R. 32(A) to be submitted into evidence.
 {¶ 33} In the present case, it was undisputed that Henn lived in Nebraska and was therefore beyond the subpoena power of the court. No evidence was presented to show that appellee procured Henn's absence or that Werner was prejudiced by the use of the deposition. Indeed, during the taking of the deposition, Werner's counsel was given full opportunity to cross-examine Henn but chose no to do so. Furthermore, at the reading of the deposition at the trial, the court ruled on all of the objections raised by Werner. Given these facts, we fail to see how the trial court abused its discretion in permitting the deposition to be submitted into evidence. See Descamps v. Kripke (Sept. 29, 2000), Lucas App. No. L-99-1411. Where the court finds that a witness is beyond the subpoena power of the court, Civ.R. 32(A)(3) states that the deposition of that witness may be used "by any party for any purpose." The third assignment of error is therefore not well-taken.
 {¶ 34} Given our conclusions regarding appellant's assignments of error, appellee's cross-assignment of error which challenges the trial court's ruling on his motion for prejudgment interest is moot.
 {¶ 35} On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Erie County Court of Common Pleas is reversed. This cause is remanded for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
 JUDGMENT REVERSED.
Lanzinger and Singer, JJ., concur.