[Cite as *Hunter v. Lehigh Gas-Ohio*, 2012-Ohio-2392.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97546**

## KATRINA HUNTER

PLAINTIFF-APPELLANT

vs.

## LEHIGH GAS-OHIO, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-746351

**BEFORE:** Celebrezze, J., Blackmon, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** May 31, 2012

**ATTORNEYS FOR APPELLANT**

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio   44113

Thomas J. Zaffiro
4577 Mayfield Road
South Euclid, Ohio   44121


**ATTORNEYS FOR APPELLEE**
**BP PRODUCTS NORTH AMERICA, INC.**

Alexandra V. Dattilo
Joseph T. Dattilo
Michael P. O'Donnell
Charles D. Price
Brouse McDowell
600 Superior Avenue East
Suite 1600
Cleveland, Ohio   44114


**FOR APPELLEE LEHIGH GAS-OHIO, L.L.C.**

Lehigh Gas Ohio, L.L.C., pro se
c/o Capitol Corporate Services, Inc.
Statutory Agent
4568 Mayfield Road
Suite 204
Cleveland, Ohio   44121

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, Katrina Hunter, brings this appeal challenging the grant of summary judgment in favor of appellee, BP Products of North America, Inc. ("BP"), in her personal injury action based on premises liability. After a thorough review of the record and law, we affirm the grant of summary judgment.

I. Factual and Procedural History

{¶2} Katrina Hunter, a home health aid, stopped at a BP gas station in Cleveland Heights, Ohio, at approximately 6:50 a.m. on January 23, 2009, to get a cappuccino before heading to a client's home. She frequently visited this gas station to get coffee. She parked her car in the same location she had on many occasions and walked into the gas station to get her coffee. The weather was inclement that morning. It was raining and temperatures were low, but evidence is lacking as to how low. Hunter stated that the low that day was 24 degrees, but did not estimate the temperature at the time of her accident.

{¶3} As Hunter exited the store, she slipped and fell on a patch of ice submerged in a puddle of water. She said she could not see the ice because of the water covering it and the glare off the water from the overhead lights in the area. After falling, Hunter saw salt commonly used to melt snow and ice on her hands. She also noticed water running off the building and overhead structure pooling by the entrance of the

convenience store.  She did not notice a drain or other means to prevent pooling water from accumulating where she fell.  Hunter was helped off the ground by a gas station employee and more salt was added to the entrance area.

{¶4} Hunter brought suit against Lehigh Gas-Ohio, L.L.C. ("Lehigh"), BP, and BP America Inc. ("BP America"), to recover for injuries allegedly sustained from the fall. Lehigh and BP America were dismissed from the suit, leaving BP as the remaining defendant.  BP filed for summary judgment on June 24, 2011, which Hunter opposed. The trial court found in favor of BP and granted its motion.   Hunter then appealed.

## II.   Law and Analysis

{¶5} Hunter assigns one error for review — "[t]he trial judge erred as a matter of law, by granting summary judgment upon [her] premises liability claim against [BP]."

### A.   Premises Liability

#### i.   Standard of Review

Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.  *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶6}   It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).   In *Dresher v. Burt*, 75 Ohio St.3d 280, 662

N.E.2d 264 (1996), the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991). Under *Dresher*, the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.*" (Emphasis sic.) *Id.* at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. *Id.* at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. *Id.*

{¶7} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 622 N.E.2d 1153 (4th Dist.1993). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th Dist.1990).

ii.   Duty Owed to Business Invitee For Accumulation of Ice

{¶8} In Ohio, there is no duty owed to an invitee to remove natural accumulations of ice and snow that typically result from "freeze and thaw cycles which commonly cause ice formations * * *." *Mubarak v. Giant Eagle, Inc.*, 8th Dist. No. 84179,

2004-Ohio-6011, ¶ 18, citing *Hoenigman v. McDonald's Corp.*, 8th Dist. No. 56010, 1990 WL 1334 (Jan. 11, 1990), citing *Lopatkovich v. Tiffin*, 28 Ohio St.3d 204, 206-207, 503 N.E.2d 154 (1986). Generally, ice formations "are considered to be natural accumulations absent a showing of negligence on the part of the landowner or occupier." *Id*.

> It is well-settled that there is no general duty upon an occupier of land to warn invitees on the property against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 233 N.E.2d 589, syllabus; *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 Ohio B. 267, 480 N.E.2d 474. "The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of [the] premises may reasonably expect that a business invitee on the premises will discover those dangers and protect himself against them." *Id*., syllabus at two. The rationale is that an open and obvious danger itself serves as a warning, and that "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take the appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 1992-Ohio-42, 597 N.E.2d 504. Therefore, an owner and occupier has no duty to remove natural accumulations of ice and snow from private walks and steps on the premises. *Id*., syllabus at three. *Bailey v. St. Vincent DePaul Church*, 8th Dist. No. 71629, 1997 WL 232685 (May 8, 1997).

{¶9} As noted in *Bailey*, there are two exceptions to the open and obvious doctrine:

> If an occupier is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on his or her premises has created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions prevailing generally in the area, negligence may be proven. * * * A second exception to the no-duty rule exists where the owner is actively negligent in permitting or creating an unnatural accumulation of ice and snow. *Id*., citing *Lopatkovich, supra*.

{¶10} In *Bailey*, an invitee slipped and fell on an icy walkway leading into a church. Bailey alleged that the ice was not open and obvious because of particular conditions that the church knew about. According to her, ice falling from the church roof onto the walkway leading to the church entrance would thaw and then refreeze, creating a substantially more dangerous condition than she could reasonably anticipate. On appeal, this court determined that "the freeze and thaw cycle accompanying the winter climate in northeastern Ohio" created a "natural accumulation of snow and ice." There was no evidence that defendant did anything to transform it into an unnatural accumulation.

{¶11} Similar to an argument advanced in the present case, Bailey specifically argued that placement of the sidewalk under a known drainage area created an unnatural accumulation of ice and snow. This court rejected that argument where no evidence of negligence was presented. *Id*. at *2. *Accord Flint v. Cleveland Clinic Found.*, 8th Dist. Nos. 80177 and 80478, 2002-Ohio-2747, ¶ 18 ("An unnatural accumulation of snow and ice is one that has been created by causes and factors other than meteorological forces of nature such as the inclement weather conditions of low temperature, strong winds and drifting snow.").

{¶12} In another similar case, this court reversed the grant of a directed verdict dismissing a corporate drug store owner from a premises liability action where evidence was presented that a canopy over the entrance of the store leaked and where drug store employees knew of the leak and the tendency of water to accumulate under the canopy.

*Tyrrell v. Invest. Assoc., Inc.*, 16 Ohio App.3d 47, 474 N.E.2d 621 (8th Dist.1984). This court relied on the evidence presented that employees of the drug store admitted that they were aware of the faulty canopy to hold that there was an issue of fact regarding the drug store's negligence in creating a more dangerous condition. *Id.* at 49.

{¶13} The *Tyrrell* case is distinguishable from Hunter's claim because we have no evidence of a defective canopy or that BP employees knew about any defective condition or had superior knowledge of any condition that would create a hazard to the business invitees frequenting the store.

{¶14} Hunter would have knowledge imputed to BP based on her discovery of salt on the sidewalk in front of the store. However, that is a leap unsupported by evidence in the record. Hunter claims that BP could have supplied an affidavit stating that salting occurred as a routine procedure when temperatures were below freezing, but its failure to do so means that this was not a routine procedure, and knowledge of the ice should be imputed. However, there is no evidence in the record implying knowledge of a dangerous condition as there was in *Tyrrell*. Appellant could have deposed employees present at the store that morning, but chose not to. An incident report was generated by BP as a result of Hunter's fall. It listed the witnesses to the fall including at least one BP employee. No one deposed these witnesses, leaving this court with nothing but speculation on Hunter's part that the employees of BP knew of the icy condition at the entrance to the convenience store. Unsupported conclusions do not create a question of fact. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264.

**{¶15}** "Moreover, 'prior shoveling or salting does not render subsequent accumulations of ice to be unnatural.'" *Lehman v. Cracker Barrel Old Country*, 5th Dist. No. 2004-CV-0048, 2005-Ohio-370, ¶ 30, quoting *Klein v. Ryan's Family Steak House*, 9th Dist. No. 200683, 2002-Ohio-2323. In *Klein*, the Ninth District reaffirmed that "'the spreading of de-icing materials on certain portions of a parking lot will, as a matter of law, neither create a hidden danger nor impute superior knowledge thereof to a property owner.' (citation omitted.)" *Id.* at ¶ 19, quoting *Goodwill Indus. of Akron v. Sutcliffe*, 9th Dist. No. 19972, 2000 WL 1288057, *2 (Sep. 13, 2000). Accordingly, this claim is without merit. Knowledge of a dangerous condition should not be imputed simply because salt was found in the area of the accident.

**{¶16}** BP has asserted that the ice Hunter slipped on was a natural accumulation. Hunter's allegations that water was accumulating by running off the sides of the building and the small canopy over the length of the sidewalk does not change the nature of the accumulation of ice to anything other than the expected conditions one encounters as a resident of northeast Ohio in times of inclement weather. Hunter has failed to offer any evidence that BP had superior knowledge of the danger presented or that its actions substantially changed the condition of the entrance to be more hazardous than surrounding areas.

**{¶17}** There is also no evidence of negligence on BP's part as there was in *Tyrrell* where the canopy was defective. Hunter has not alleged that the structure partially covering the entrance and sidewalk was defective or dilapidated and caused the entrance

to be substantially more dangerous than surrounding areas. Therefore, Hunter has failed to show that she slipped on anything other than a natural accumulation of ice, and BP is not liable for her injuries.

### III. Conclusion

{¶18} Hunter offers only conclusory statements that the ice she slipped on was an unnatural accumulation. This is not sufficient to survive a motion for summary judgment. Therefore, the trial court did not err in granting BP's motion.

{¶19} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA ANN BLACKMON, A.J., and
MARY J. BOYLE, J., CONCUR