[Cite as *Schirmann v. Arena Mgt. Holdings, L.L.C., d.b.a. U.S. Bank Arena*, 2018-Ohio-3349.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DAVID J. SCHIRMANN, | : | APPEAL NO. C-170574 |
| | | TRIAL NO. A-1601132 |
| and | : | |
| NOREEN E. SCHIRMANN, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| ARENA MANAGEMENT HOLDINGS, LLC, d.b.a. US BANK ARENA, | : | |
| | : | |
| NEDERLANDER ENTERTAINMENT, LLC, d.b.a. US BANK ARENA, | : | |
| and | : | |
| CITY OF CINCINNATI, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 22, 2018

*Laursen & Lucas* and *Erik W. Laursen*, for Plaintiffs-Appellants,

*Schroeder, Maundrell, Barberie & Powers* and *Robert S. Hiller*, for Defendants-Appellees Arena Management Holdings, LLC, d.b.a. US Bank Arena, and Nederlander Entertainment, LLC, d.b.a. US Bank Arena,

*Paula Boggs Muething*, City Solicitor, and *Marva K. Benjamin*, Senior Assistant Solicitor, for Defendant-Appellee the City of Cincinnati.

**CUNNINGHAM, Presiding Judge.**

{¶1} David J. Schirmann and his wife Noreen E. Schirmann appeal the summary judgments granted to the city of Cincinnati, and Arena Management Holdings, LLC, and Nederlander Entertainment, LLC, (referred to jointly as "the US Bank Arena defendants"), on the Schirmanns' negligence and loss-of-consortium claims. David slipped and fell on snow and ice on the exterior plaza around the US Bank Arena ("the arena") after the city had cleared the plaza of snow and treated it for ice. Because we conclude that David fell on a natural accumulation of snow and ice, and no material issues of fact exist that would result in liability for the city or the US Bank Arena defendants even assuming for purposes of summary judgment that they owed David the duty of care owed a business invitee, we affirm.

### Background Facts and Procedure

{¶2} The undisputed facts indicate that on the evening of March 3, 2014, David slipped on snow and ice while en route to attend an Eagles concert at the arena. The concrete plaza where David fell outside of the entrance to the building was located at least one level up from the street. A winter storm the day before had left accumulating snow in the city. Although the city did not own the arena building, a crew from the city's Public Services Department had removed the snow and treated the plaza with ice control.

{¶3} According to Timothy P. Kellard, the city employee who supervised and approved the city's work that day, the crew performed its duties using the quality of care that was consistent with their training and with industry standards. Kellard also indicated in his affidavit and his deposition testimony that the city always performed the snow removal and ice control on the plaza outside the arena, keeping the area safe for all pedestrians passing through the area, including those attending events inside the arena.

While the city would send a crew for additional treatment if arena staff indicted it was necessary, Kellard stated that he had not been made aware of any dangerous conditions on the plaza or the necessity to provide additional treatment to the area on March 2 or March 3, 2014.

{¶4} The facts also demonstrated that on the day of David's fall, Noreen's employer, the local school district, had cancelled work due to the snowy weather. She recalled in her deposition testimony that the weather had been "sunny" and "warm" during the afternoon, but she could not remember the evening's weather. David, however, recalled in his deposition testimony that it had been "overcast" and "chilly" when he finished work around 6 p.m., and it had been "cold" at 7:45 p.m., the time of his fall. David did not recall seeing any snow or ice on the plaza until after he fell, but he had noticed snow on the curb of the street after exiting from the cab that had taken him to the arena, as well as "some water" on the stairs leading from the street to the plaza level where he fell.

{¶5} After David's fall, Sergeant Michael Machenheimer, a Cincinnati police officer working a private duty, assisted him and called for a life squad that later took David to the hospital. Machenheimer then went inside the arena and requested remediation in the area where David had fallen. Staff from the arena put salt on the slippery area and covered it with cardboard.

{¶6} Machenheimer testified at his deposition that it was "really cold" at the time of the fall and that there were weather-related patches of snow and ice on the plaza. Machenheimer noticed that David was wearing cowboy boots and thought that, based on his personal experience with wearing them, they were the "worst" shoes to wear in the "slippery weather" conditions that existed that evening.

{¶7}   The Schirmanns' daughter-in-law Erica Schirmann also attended the concert, but she had approached the arena by a different route than David's.  She recalled in her affidavit that the plaza surface on her route was "dry and clear for the most part."  She also averred that a Cincinnati police officer she spoke to, at some unidentified point and place after David's fall, had told her that "it was a mess out there and it was a mistake to have the area in the condition it was in and not have it blocked off to prevent people from going in that area."   Denny Lammers, who had accompanied the Schirmanns to the concert, stated in his affidavit that he could not tell from looking at the area where David fell that it was slippery and he had seen another individual fall in the same area shortly after David's fall.

{¶8}   As a result of his fall, David allegedly sustained personal injuries and Noreen allegedly lost the services and consortium of her spouse. They filed a complaint against both the city of Cincinnati and the US Bank Arena defendants alleging, among other things, that the defendants had been negligent by failing to maintain the plaza in a safe or hazardous-free condition and for failing to warn David of a dangerous condition. The Schirmanns contended that both the city and the US Bank Arena defendants owed David the duty of ordinary care that is owed a business invitee by the owner, operator, or manager of the premises, because these defendants were the owner, operator, or manager of the premises or had otherwise assumed such a duty of care.

{¶9}   The city answered the complaint, denied the allegations, and raised the defense of immunity.  The US Bank Arena defendants answered the complaint and denied the allegations.   The city and the US Bank Arena defendants then filed cross-claims against one another and moved for summary judgment against the Schirmanns.

{¶10}   The US Bank Arena defendants sought summary judgment on the ground that they had breached no duty to David, even if they owed him the duty of care owed a business invitee, because David had fallen on naturally accumulating snow and ice.[1]   The city sought summary judgment on the ground that it was immune from liability for the claims because the allegations arose out of its performance of the governmental function of "maintenance" of a "sidewalk," as set forth in R.C. 2744.01(C)(2)(e), for which no exception to immunity applied.   Alternatively, the city contested the allegation of negligence and argued that it could not have breached any allegedly-owed-duty-of-ordinary care because David had fallen on naturally accumulating snow and ice that he should have appreciated considering the weather conditions.   Both the US Bank Arena defendants and the city argued that Noreen's claims were merely derivative claims and necessarily failed absent any viable claim by David.

{¶11}   In opposing summary judgment for the US Bank Arena defendants, the Schirmanns argued those defendants owed a duty to provide reasonably "safe ingress and egress" to the concert they were presenting, which required them to discover and remedy the hazardous condition created by the city.

{¶12}   In opposing the city's motion for summary judgment, the Schirmanns contended that the city's attempts to remediate the ice and snow at the arena did not involve the governmental function of maintaining a sidewalk, and instead, involved a propriety function.   They cited to the statutorily defined propriety function of "[t]he operation and control of a public stadium, auditorium, civil or social center, exhibition

---

[1] In its reply to the Schirmanns' memorandum in opposition to summary judgment, but not in their motion for summary judgment, the US Bank Arena defendants claimed the evidence "clearly" demonstrated that David fell in an area owned by the city, and they took the position that therefore they did not owe David a duty of ordinary care.  The US Bank Arena defendants assert this same argument on appeal as an alternative ground in support of an affirmance.  We do not address it.

hall, arts and crafts center, band or orchestra, or off-street parking facility," as set forth in R.C. 2744.01(G)(2)(e). Because the area was allegedly hazardous when David fell, they claimed the city had performed negligently and the exception to immunity for the negligent performance of proprietary functions applied.

{¶13} The trial court granted summary judgment to the city and the US Bank Arena defendants, but it did not issue an opinion explaining the basis of its judgments. The Schirmanns challenge the summary judgment granted to the city in their first assignment of error, and the summary judgment granted to the US Bank Arena defendants in their second assignment of error. We review summary judgment de novo, applying the same standard as the trial court. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

## Summary Judgment for the City

{¶14} The Schirmanns argue that genuine issues of material facts remain as to whether the city was entitled to immunity. They argue the exception to immunity for injuries caused by the negligent performance of propriety functions by the city's employees applies, and there was sufficient evidence of the city's negligence to avoid summary judgment.

{¶15} The city maintains on appeal that it had absolute immunity for its acts in maintaining a "sidewalk," and in the alternative, it could not be held liable for negligence because the evidence showed only that David fell on naturally accumulating snow and ice, and the city had no superior knowledge of any hazardous condition before David fell.

{¶16} As the Schirmanns recognize, they cannot recover against the city absent evidence of negligence. We begin our analysis with this negligence issue, and conclude that even if immunity for the governmental function of maintaining a sidewalk does not

apply, and the city owed David the duty of ordinary care similar to that owed a business invitee by a business owner as alleged in the complaint, no genuine issues of material fact exist on the issue of negligence that preclude summary judgment for the city.

{¶17} To establish a cause of action for negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998). In this case, David alleged that the city owed him the same duty a business owner owes a business invitee on the premises. A business owner owes a business invitee a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not subjected to unreasonable dangers. *Paschal v. Rite Aid Pharmacy Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). The duty of care owed by a business owner includes providing a reasonably safe ingress and egress for business invitees. *Tyrrell v. Invest. Assoc., Inc.*, 16 Ohio App.3d 47, 49, 474 N.E.2d 621 (8th Dist.1984), cited in *Weaver v. Standard Oil Co. of Ohio*, 61 Ohio App.3d 139, 141, 572 N.E.2d 205 (1st Dist.1989).

{¶18} But a business owner is under no duty to protect business invitees from dangers that "are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. Thus, a business owner "ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow." *Brinkman v. Ross*, 68 Ohio St.3d 82, 83, 623 N.E.2d 1175 (1993), cited in *Bowen v. Columbus Airport Ltd. Partnership*, 10th Dist. Franklin No. 07AP-108, 2008-Ohio-763,

¶ 10; *see Kinkey v. Jewish Hosp. Assn. of Cincinnati*, 16 Ohio App.2d 93, 95, 242 N.E.2d 352 (1st Dist.1968).

{¶19} The duty of ordinary care business owners owe business invitees with respect to accumulations of snow and ice has been referred to as the "no-duty winter rule." *Bowen* at ¶ 11. Where snow and ice accumulate from natural occurrences, a business owner has a right to assume a business invitee will "appreciate" the risks presented and take action to "protect themselves accordingly." *Weaver* at 140, citing *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 503 N.E.2d 159 (1986); *Bowen* at ¶ 10.

{¶20} The no-duty winter rule is inapplicable if the business owner was negligent in permitting or creating an unnatural accumulation of ice or snow. *Bowen* at ¶ 13. Further, this no-duty winter rule does not apply, even if the accumulation is natural, if the business owner is shown to have had actual or implied notice that the accumulation on his or her property has created a condition substantially more dangerous than a business invitee should have anticipated due to knowledge of conditions prevailing generally in the area. *See Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St.2d 38, 227 N.E.2d 603 (1967), paragraph one of the syllabus; *Bowen* at ¶ 12. For this exception to apply, the owner or occupier of the property must have "superior knowledge" of the hazard. *Bowen* at ¶ 12.

{¶21} If one party may be presumed to know that thawing and refreezing is a natural phenomenon, the other party may also, equally. *Id.* at ¶ 12; *Kinkey* at 96. Thus, the superior-knowledge standard requires more than showing that the owner or occupier should have known of the usual dangers resulting from natural accumulations of snow and ice. *Bowen* at ¶ 12. For example, if the naturally accumulating snow covers a deep hole in the surface of a parking area, creating a condition substantially more dangerous to

a business invitee than that normally associated with the snow, and the business owner has actual or implied knowledge of the condition, the owner's failure to correct the condition constitutes actionable negligence. *Mikula v. Slavin Tailors*, 24 Ohio St.2d 48, 57, 263 N.E.2d 316 (1970).

{¶22} The Schirmanns first argue that there is evidence in the record showing that the city was negligent in permitting or creating an unnatural accumulation of snow and ice, precluding application of the no-duty winter rule. We conclude otherwise.

{¶23} The facts viewed in the light most favorable to the Schirmanns show that David slipped and fell during a cold evening in early March, after an accumulating snowfall in the city that was followed by the city's removal of the snow and treatment for ice "consistent with industry standards," and a warm-up during the day. Nothing in the record suggests that the snow and ice had accumulated unnaturally.

{¶24} The Schirmanns argue that the city's mere action in removing the snow from the surface of the plaza rendered the snow and ice on the plaza an unnatural condition. But the city's action did not transform a natural accumulation of snow into an unnatural accumulation without evidence of negligence. "[S]alting, shoveling, or plowing does not in and of itself transform a natural accumulation to an unnatural one without some negligence on the part of the owner or his or her agents." *Moore v. Kroger Co.*, 10th Dist. Franklin No. 10AP-431, 2010-Ohio-5721, ¶ 10; *see McDonald v. Kroger*, 150 Ohio App.3d 191, 2002-Ohio-6195, 779 N.E.2d 1083 (2d Dist.); *Kinkey*, 16 Ohio App.2d at 96, 242 N.E.2d 352; *Bacon v. Fowlers Mill Inn & Tavern,* 11th Dist. Geauga No. 2007-G-2753, 2007-Ohio-4958, ¶ 19; *Davis v. The Timbers Owners' Assn.*, 1st Dist. Hamilton No. C-990409, 2000 WL 43709 (Jan. 21, 2000).

{¶25}   Thus, this court has held that when a parking lot was plowed but some of the snow melted and formed an icy patch later in the day, the formed ice is considered a natural accumulation.  *Kinkey* at 94-96.  We have also held that the ice causing the plaintiff's fall in a parking lot was a natural accumulation where the evidence revealed that it was either "ice that remained after the parking lot had been plowed or ice that resulted from runoff water after the piled snow had thawed." *Davis* at *2.

{¶26}   The facts of this case are similar to the facts in *Kinkey* and *Davis*.  The Schirmanns failed to put forth any evidence linking the ice accumulation to anything other than the adverse weather conditions, failing to contradict the city's evidence that it had used reasonable and appropriate methods for the snow removal and ice control.  Therefore, the exception to the no-duty winter rule for unnatural accumulations of snow and ice did not apply.

{¶27}   Next, the Schirmanns argue that the facts are in dispute as to whether the city had superior knowledge of the hazard, implicating the other exception to the no-duty winter rule and precluding summary judgment. To impose a duty under this exception, the Schirmanns had to show that the snow and ice David fell on was substantially more dangerous than he reasonably could have anticipated in light of the prevailing conditions in the area and that the city knew about the condition or should have known about it.  *See Debie*, 11 Ohio St.2d 38, 227 N.E.2d 603, at paragraph one of the syllabus; *Bowen*, 10th Dist. Franklin No. 07AP-108, 2008-Ohio-763, at ¶ 12.  They failed in these respects.

{¶28}   David's deposition testimony demonstrates that he noticed snow on the curb of the street before ascending the stairs that led to the plaza and "some water" on the stairs.  He was wearing a winter jacket that evening and described the weather as "cold." Although he did not see snow and ice before he fell, he recalled that he was "laying in snow

10

and ice" when he was on the surface of the plaza after he fell. And Sergeant Machenheimer indicated that he had observed weather-related ice and snow on the plaza. Erica Schirmann stated that the path she took to enter the arena was not entirely dry and clear. Further, there is no evidence that the city had actual notice of any hazards on the plaza before David's fall. This evidence shows only that David was at least equally aware as the city of the potential for slick conditions, and should have anticipated the hazard. *See Martineau v. Am. Inns, Inc.*, 1st Dist. Hamilton No. C-810354, 1982 WL 4673, *1-2 (Mar. 3, 1982) (Business invitee should reasonably have expected that the walkway under a canopy that led to a restaurant was not free of hazards, even though she did not notice the ice patch on the walkway before she fell, when she had knowledge that it had snowed the day before and that the temperature was freezing or near freezing, and she admitted that " 'it was just sort of wet all over.' ").

{¶29} We can find nothing in the evidence that could lead reasonable minds to conclude that the city breached any duty allegedly owing to David. There is no showing that the city created a hazard or had any specialized knowledge of the condition such that it could not assume that David would discover the danger and protect himself against it. Consequently, we overrule the first assignment of error.

### Summary Judgment for the US Bank Arena Defendants

{¶30} In challenging the summary judgment for the US Bank Arena defendants, the Schirmanns argue, as they did with respect to the city, that the facts are in dispute as to whether the snow and ice David slipped on was an unnatural accumulation. We have already determined, after reviewing the applicable law and the evidence adduced below, that one could only conclude that the snow and ice that caused David's fall was naturally accumulating.

{¶31}   The Schirmanns further argue the US Bank Arena defendants owed him a duty to monitor "unnatural accumulations" of ice.   While that may be true, the accumulation here was natural.   To establish liability, the Schirmanns had to present evidence demonstrating that the US Bank Arena defendants had superior knowledge of a hazardous condition associated with the natural accumulation.   The record is devoid of such evidence.   Consequently, we reject the Schirmanns' argument challenging summary judgment for the US Bank Arena defendants and overrule the second assignment of error.

## Conclusion

{¶32}   We conclude that David fell on a natural accumulation of snow and ice, and no material issues of fact exist that would result in liability for the city or the US Bank Arena defendants based on the allegation that they owed David the duty of care owed a business invitee.   Noreen's derivative loss-of-consortium claims necessarily fail, too. Therefore, the trial court's judgment is affirmed.

Judgment affirmed.

**MYERS** and **MILLER**, **JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.