[Cite as *Wood v. Kroger Co.*, 2025-Ohio-1385.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| NATALIE WOOD, | : | APPEAL NO. C-240322 |
| | | TRIAL NO. A-2301040 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| THE KROGER COMPANY, | : | *O P I N I O N* |
| Defendant-Appellee, | : | |
| and | : | |
| ANTHEM HEALTH PLANS OF KENTUCKY, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD, | : | |
| | : | |
| Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: April 18, 2025

*Bey & Associates LLC* and *Anita M. Washington*, for Plaintiff-Appellant,

*Schroeder, Maundrell, Barbiere & Powers, Christopher L. Moore, James J. Barbiere* and *Jacob R. Conners*, for Defendant-Appellee.

**KINSLEY, Presiding Judge.**

{¶1}    Plaintiff-appellant Natalie Wood appeals the judgment of the Hamilton County Court of Common Pleas granting summary judgment in favor of defendant-appellee The Kroger Company ("Kroger") on Wood's claim of negligence.  Wood sued Kroger after she fell on what purported to be an ice patch as she refueled her car at a Kroger gas pump.  She claimed the ice formed after precipitation leaked through a hole in the roof canopy.  Reviewing the evidence before it at the summary judgment stage, the trial court concluded that no evidence established that the ice resulted from an unnatural accumulation.  It also held that Kroger lacked actual or constructive knowledge of the leak in the canopy and the existence of the patch of ice, absolving it of liability.

{¶2}    Each of Wood's four assignments of error on appeal essentially raise a similar argument: that genuine disputes of material fact as to whether the ice accumulated unnaturally and as to Kroger's knowledge of the ice and canopy defect precluded summary judgment.  We agree with Wood, because the only two witnesses with knowledge of the premises—a Kroger fuel center manager and a Kroger fuel center employee—offered contradictory testimony, creating a genuine dispute for the trier of fact to resolve.  We accordingly reverse the judgment of the trial court and remand the matter for trial.

### *Factual and Procedural History*

{¶3}    This appeal arises from an incident that occurred at the Anderson Township Kroger Fuel Center ("the fuel center") on December 19, 2019. Wood claims that she slipped and fell on a patch of ice while attempting to refuel her car.  She was seriously injured from the fall, ultimately needing surgery to repair a broken wrist.

{¶4}    Wood first sued Kroger in 2021, but she voluntarily dismissed that

action before it was resolved.[1]

**{¶5}** In 2023, Wood refiled her complaint. In this second lawsuit, Wood contended that ice had unnaturally formed near the fuel pumps at Kroger as a result of a hole in the roof canopy. Wood claimed Kroger had notice of the defect, but negligently maintained the premises.

**{¶6}** The parties engaged in discovery about the December 19, 2019 incident and about Kroger's operations. During the discovery phase, Wood disclosed that she would be relying on the testimony of a biomechanics and building code expert, Larry Dehus. In 2021, Dehus determined that the ice formation at Kroger was in fact "normal," but in 2023, he amended his report to conclude that the accumulation of ice at the Kroger gas pumps was "abnormal." When Kroger challenged whether Dehus's credentials entitled him to testify as expert, Wood withdrew his testimony.

**{¶7}** At the close of discovery, Kroger moved for summary judgment, raising four arguments. First, Kroger argued that it was entitled to judgment as a matter of law because Wood failed to demonstrate that Kroger had superior knowledge of ice accumulation at the gas pumps. Kroger therefore contended it had no duty to warn its customers of the hazard. Second, Kroger faulted Wood for failing to prove that the accumulation of ice was unnatural, a requirement to establish premises liability. Third, Kroger pointed to a lack of proof that ice at the gas pumps was substantially more dangerous than the general risk presented by ice and snow accumulation. Fourth, Kroger further argued that because the ice was an open and obvious hazard, Kroger was not liable for Wood's injuries.

---

[1] Wood also sued her insurance company Anthem, seeking a declaratory judgment regarding Anthem's right of subrogation. Wood's claim against Anthem is not the subject of this appeal, and Anthem did not appear in this appeal.

**{¶8}** In support of these arguments, Kroger submitted limited excerpts of Wood's deposition, in which Wood stated that she did not notice the ice while driving up to the fuel center. Wood also admitted that she did not see the ice when she walked around her car to access the fuel pump.

**{¶9}** Kroger also provided authenticated still photographs, taken from footage of the fuel center's surveillance cameras, that depict a large, discolored area of pavement at the fuel center. The photos are taken in sequence from the surveillance video. They depict Wood driving to the fuel center and parking at a gas pump. Several photos then show another individual walking behind Wood's vehicle across the area where the discolored patch is located. The remainder of the photos show Wood exiting from her car and walking in the direction of the discolored pavement. None of the photographs depict any precipitation on the ground, either in the fuel center under the canopy or in the limited area that is visible outside the fuel center, except for the discolored patch of pavement.

**{¶10}** In addition to the photographs, Kroger submitted the affidavit of Randy Woodward, the fuel center's manager. Woodward asserted in his affidavit that he had no knowledge of any defect or problem with the fuel center's canopy, nor was he aware that anyone else had been injured as a result of ice near the fuel pumps.

**{¶11}** Wood opposed Kroger's summary judgment motion. She disputed Woodward's testimony by presenting the affidavit of Ruth Hale, a fuel center employee who was working at the time of Wood's accident. In her affidavit, Hale attested that there was a hole in the roof canopy above where Wood fell that allowed water to pool and freeze on the ground below. She further testified that she had warned Woodward of the hole and the ice and that she had told him someone could slip and fall as a result of the ice. Based on Hale's testimony, Wood argued that there was a genuine dispute

of material fact as to Kroger's alleged negligence. Wood also submitted a transcript of Woodward's deposition in response to Kroger's summary judgment motion. At his deposition, Woodward testified that he had no knowledge of a hole in the roof canopy.

**{¶12}** The trial court conducted a summary judgment hearing. A central issue at the hearing was whether Wood was required to present expert testimony to prove that the source of the ice was a construction defect. Because Wood had withdrawn Dehus as an expert, Kroger emphasized Wood's inability to prove that the ice originated from a flaw in the canopy's roof or design rather than from the intended manner of drainage of the canopy. Kroger also asserted that, notwithstanding Hale's affidavit, Wood failed to demonstrate that Kroger had notice of the ice or the alleged roof defect.

**{¶13}** For her part, Wood resisted the notion that expert testimony was required to identify a hole in the canopy as the source of the ice. As a matter of common sense, Wood argued that any layperson, including Hale, could readily observe water falling from a hole in the canopy onto the ground. Wood also emphasized the conflicting testimony between Hale and Woodward as to whether Kroger had actual notice of the leak and the resulting patch of ice. In Wood's view, because those key facts remained contested, the case should have proceeded to trial.

**{¶14}** Notably, neither party presented evidence—pictorial or otherwise—showing the condition of the roof canopy. Kroger did not present evidence indicating that the roof was in good repair, and Wood did not present evidence, aside from Hale's affidavit, describing the exact nature of the hole in the canopy. Thus, the sole evidence before the trial court as to the condition of the roof was Hale's affidavit stating that it contained a hole.

**{¶15}** Following the hearing, the trial court granted Kroger's motion for

summary judgment. It concluded that "there is no evidence in the record that establishes that the ice was the result of an unnatural accumulation." It also determined that Kroger had no actual or constructive notice of either the ice or a defect in the canopy roof.

{¶16} Wood timely appealed.

*Analysis*

{¶17} On appeal Wood raises four assignments of error, all of which challenge various aspects of the trial court's summary judgment decision. In her first assignment of error, Wood contends, in a highly general way, that the trial court erred in granting summary judgment. Her second assignment of error takes issue with the trial court's characterization of the evidence as to whether there existed an unnatural ice accumulation. Her third and fourth assignments of error challenge the trial court's findings as to Kroger's actual and constructive knowledge of the ice and the roof canopy defect, respectively. Because all of Wood's assignments of error relate to the appropriate legal standard for negligence cases arising from winter precipitation on a business premises, we consider them together.

{¶18} We review a trial court's decision granting summary judgment under a de novo standard of review. *Gray v. Cincinnati Children's Hosp. Med. Ctr.*, 2024-Ohio-3168, ¶ 12 (1st Dist.). Under Civ.R. 56(C), summary judgement is only appropriate where the moving party establishes (1) that no genuine dispute of material fact remains, (2) that the moving party is entitled to judgment as a matter of law, and (3) that when viewing evidence in a light most favorable to the nonmoving party, reasonable minds could only come to one conclusion, one that is ultimately adverse to the nonmoving party. *Price v. Verizon Cellular Sales*, 2023-Ohio-4621, ¶ 9 (1st Dist.).

### *The No-Duty Winter Rule*

**{¶19}** In each of her assignments of error, Wood challenges the trial court's application of the no-duty winter rule, which governs a premises owner's duty to protect guests from the hazards of winter precipitation. More specifically, Wood argues that summary judgment was improper because evidence in the record demonstrated that ice at the Kroger fuel center formed unnaturally, as opposed to from ordinary winter precipitation. She therefore argues that Kroger owed a duty of care to its customers, because the ice went beyond what was normal and expected during periods of cold weather and because Kroger had superior knowledge of the presence of the ice. She claims that Kroger breached this duty, thus acting negligently, by not removing the ice or warning customers of its presence.

**{¶20}** To prevail on a negligence claim, a plaintiff must establish (1) that the defendant owed a duty of care to the plaintiff, (2) that the defendant breached the duty, and (3) that the defendant's breach proximately caused the plaintiff's injuries. *Price* at ¶ 10. In a premises liability case, a property owner owes a duty to invitees, business visitors who come to the property by either express or implied invitation to provide an economic benefit to the owner. *Id.* at ¶ 11. That duty is one of ordinary care to maintain the premises in a reasonably safe condition and to warn invitees of hidden dangers. *Hammond v. Lotz*, 2022-Ohio-3542, ¶ 7 (1st Dist.).

**{¶21}** Special rules govern the exercise of this duty when the danger arises from winter precipitation like ice and snow. Under Ohio's "no-duty winter rule," property owners have neither the duty to warn business invitees of dangers associated with natural accumulations of winter precipitation, nor the duty to remove such accumulations from the private pathway of the premises. *Simpson v. Ison*, 2020-Ohio-1582, ¶ 20 (1st Dist.). This is because business owners can reasonably expect

their invitees to appreciate the dangers of snow and ice and to take action to protect themselves. *Schirmann v. Arena Mgmt. Holdings, LLC*, 2018-Ohio-3349, ¶ 19 (1st Dist.).

**{¶22}** But there are two exceptions to the no-duty winter rule. The first occurs when the business owner is negligent in permitting or creating an unnatural accumulation of winter precipitation. *Id.* at ¶ 20. "An unnatural accumulation is one that results from the act of a person--one caused by 'factors other than the inclement weather conditions of low temperature, strong winds and drifting snow.'" *Graham v. Golden Arch Realty Corp.*, 2003-Ohio-5264, ¶ 6 (1st Dist.), quoting *Davis v. Timbers Owners' Assn.*, 2000 Ohio App. LEXIS 115, *4 (1st Dist. Jan. 21, 2000). Unnatural accumulations are therefore caused by human interventions that cause ice and snow to pile in unexpected places and ways. *Oliver v. Fox's Food, LLC*, 2023-Ohio-1551, ¶ 12 (10th Dist.). These can include water dripping from an overhead canopy which creates an icy patch on the sidewalk below. *See Tyrrell v. Invest. Assocs., Inc.*, 16 Ohio App.3d 47, 49 (8th Dist. 1984).

**{¶23}** Courts have sorted unnatural accumulation cases into two classifications. The first are cases involving a water source, such as a hose, faucet, or sprinkler, that originates from human action rather than from nature. *Notman v. AM/PM, Inc.*, 2004-Ohio-344, ¶ 24 (11th Dist.). The second are cases in which naturally occurring water is obstructed by a nonnatural physical impediment, such as a building or structure. *Id.* In the latter, courts generally require expert testimony to establish the cause of the unnatural accumulation, since the average layperson lacks the ability to identify defects in a structure's design. *See Capella v. Historic Developers, LLC*, 2018-Ohio-546, ¶ 51 (12th Dist.); *Dailey v. Mayo Family L.P.,* 115 Ohio App.3d 112, 117 (7th Dist. 1996) (concluding that lay testimony about a defect in

the design of a parking lot was merely speculative and not sufficient to establish a viable negligence claim); *King v. East Worthington Village*, 2013-Ohio-4160, ¶ 24 (10th Dist.) (holding that plaintiff, a lay person, was not qualified to testify that an ice accumulation resulted from a leak in a gutter, given that construction defects require expert testimony); *Lawrence v. Jiffy Print, Inc.*, 2005-Ohio-4043, ¶ 20 (11th Dist.) (holding that expert testimony *may* be necessary when testifying about a construction defect). But where a lay person is easily able to observe the source of the water—such as water dripping from a hose or faucet—expert testimony is not required. *Notman* at ¶ 25-27.

**{¶24}** The no-duty winter rule is also inapplicable where a business owner has actual or implied knowledge that an accumulation of ice or snow on the property has created a condition substantially more dangerous than a business invitee should anticipate given the invitee's knowledge of prevailing conditions in the area. *Id.* The substantially-more-dangerous exception to the no-duty winter rule requires that a business owner have superior knowledge of the hazard as compared to the invitee. *Id.* Where a plaintiff relies on a business owner's implied knowledge of a winter-related hazard, the condition must have existed for a sufficient period of time to charge the owner with constructive knowledge of it. *Madaras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169, ¶ 26 (8th Dist.). By itself, the formation of black ice on the pavement is not a substantially more dangerous condition than a business invitee should anticipate. *Id.* at ¶ 27.

**{¶25}** Wood argues that both exceptions to the no-duty winter rule apply to her case. With regard to the unnatural accumulation exception, Wood argues that the ice was created by a leak in the roof canopy, rather than by a natural source. Relying on the Hale affidavit, she contends that Kroger acted negligently by not repairing the

hole or otherwise alerting customers to the danger it created after Hale put Woodward on notice of the problem.

**{¶26}** Wood is correct that there is a genuine dispute of material fact as to whether Kroger acted negligently in permitting an unnatural accumulation of ice. Hale contends that there was a hole, that the hole created an ice patch, and that she informed Woodward of the problem before Wood fell. Woodward disputes that Hale reported any defect in the canopy to him, but he notably does not dispute that there is a hole in the canopy. The parties' witnesses therefore directly contradict each other as to whether Kroger was aware of any defect with the roof canopy, such that its failure to either repair the hole or to address the ice on the ground below with remedial measures was negligent. This is a question the trier of fact must resolve.

**{¶27}** Expert testimony is not required to assist the trier of fact on this issue. Hale's description of water dripping from a hole in the canopy onto the ground and then freezing is one that the average lay person can understand from ordinary firsthand experience. *See Notman*, 2004-Ohio-344, at ¶ 26 (11th Dist.). This is much more akin to water flowing from a hose—in one direction unimpeded by a structure— in which no expert is required, than it is to water being impeded by the faulty design of a rainwater drainage system, where an expert is needed. *See id.*; *King*, 2013-Ohio-4160, at ¶ 24 (10th Dist.). Thus, we reject Kroger's contention that Wood must prove her case by expert testimony. Hale is perfectly competent to describe what she observed, as she did in her affidavit.

**{¶28}** With regard to the substantially-more-dangerous exception to the no-duty winter rule, Wood also points to several genuine disputes of material fact. For one, she contends that there was no other precipitation on the ground at the time of her accident. She therefore argues that the prevailing weather conditions were such

that an invitee to the Kroger fuel center would not anticipate a risk of ice under the roof canopy. Still photographs submitted by Kroger depict another individual walking across the discolored area, supporting Wood's claim that ordinary people present at the fuel pumps that day did not perceive a risk from the ice patch. But Woodward testified in his affidavit that no one else had claimed any injury from slipping and falling on ice at the fuel pumps, either before or after the December 19, 2019 incident. And the parties dispute whether Kroger, through its manager Woodward, had actual knowledge of the ice. (Hale said Woodward knew; Woodward said he did not.) These, again, are matters that cannot be resolved short of trial. Whether Kroger had superior knowledge of a substantially more dangerous hazard is not a matter capable of summary resolution on this record.

{¶29} To the contrary, this is not a simple case of black ice forming from snow melting off a rooftop. Instead, Wood claims a hole in roof canopy caused a patch of ice to form unnaturally in a place where she did not see it and where she would not expect it. The parties produced a very slim record at the summary judgment stage as to the conditions of the premises, consisting of two competing affidavits and two depositions, one of which—Wood's—was submitted in only excerpt form. It is possible that additional facts developed at trial will reveal the case to be more one-sided. But, as it stands now, the record contains genuine disputes about critical facts, including whether Hale told Woodward about the ice, whether Kroger knew there was a hole in the roof canopy, and whether customers should have appreciated the potential for black ice given the prevailing weather conditions at the time.

{¶30} We accordingly sustain all four of Wood's assignments of error. Genuine disputes of material fact as to whether the accumulation of ice at the fuel center was unnatural and whether Kroger had superior knowledge of a substantially

more dangerous hazard precluded summary judgment and require a trial. We accordingly reverse the trial court's judgment and remand the matter for further proceedings.

### *Conclusion*

**{¶31}** The trial court erred in granting summary judgment for Kroger. Wood's four assignments of error are sustained, the trial court's judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment accordingly.

**CROUSE** and **BOCK, JJ.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.