# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STEPHEN BROWN | : | APPEAL NO. C-240646 |
| | | TRIAL NO. A-2103186 |
| and | : | |
| ANDRA BROWN, | : | |
| Plaintiffs-Appellants, | : | *JUDGMENT ENTRY* |
| vs. | : | |
| BOARD OF EDUCATION READING COMMUNITY SCHOOL DISTRICT, | : | |
| | : | |
| SHOOK TOUCHSTONE XV, LLC, | : | |
| | : | |
| CHARLES F. JERGENS CONSTRUCTION CO., INC., | : | |
| and | : | |
| VOORHIS, SLONE, WELSH, CROSSLAND ARCHITECTS, INC., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 8/6/2025 per order of the court.**


**By:**_____
        **Administrative Judge**

[Cite as *Brown v. Reading Community School Dist. Bd. of Edn.*, 2025-Ohio-2757.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STEPHEN BROWN | : | APPEAL NO. C-240646<br>TRIAL NO. A-2103186 |
| and | : | |
| ANDRA BROWN | : | |
| Plaintiffs-Appellants, | : | *O P I N I O N* |
| vs. | : | |
| BOARD OF EDUCATION READING<br>COMMUNITY SCHOOL DISTRICT, | : | |
| | : | |
| SHOOK TOUCHSTONE XV, LLC, | : | |
| CHARLES F. JERGENS<br>CONSTRUCTION CO., INC., | : | |
| and | : | |
| VOORHIS, SLONE, WALSH,<br>CROSSLAND ARCHITECTS, INC., | : | |
| Defendants-Appellees. | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 6, 2025

*Law Office of John H. Forg* and *John H. Forg, III*, for Plaintiffs-Appellants Stephen and Andra Brown,

*Ennis Britton Co., LPA, William M. Deters, II* and *Ryan M. LaFlamme*, for Defendant-Appellee Board of Education Reading Community School District,

*Teetor Westfall, LLC, Scyld D. Anderson* and *Lee W. Westfall,* for Defendant-Appellee Shook Touchstone XV, LLC,

*Gallagher Sharp LLP, Steven A. Keslar, Phillip T. Kelly, P. Kohl Schneider* and *Richard C.O. Rezie,* for Defendant-Appellee Charles F. Jergens Construction Co., Inc.,

*Gordon Rees Scully Mansukhani LLP, Bruce Moore* and *Gregory D. Brunton,* for Defendant-Appellee Voorhis, Slone, Walsh, Crossland Architects, Inc.

**KINSLEY, Presiding Judge.**

**{¶1}** Plaintiffs-appellants Stephen and Andra Brown ("the Browns") appeal the judgment of the Hamilton County Court of Common Pleas granting summary judgment in favor of defendants-appellees Board of Education Reading Community School District ("Reading School District"); Voorhis, Slone, Welsh, Crossland Architects, Inc. ("Voorhis"); Shook Touchstone XV, LLC ("Shook"); and Charles F. Jergens Construction Co., Inc. ("Jergens") (collectively, "the defendants"). The Browns sued the defendants for alleged negligence during the construction of new school buildings uphill from the Brown's home. They contend that the removal of trees and the subsequent installation of plastic fencing proved insufficient to stop the flow of water downhill during rainstorms, causing damaging flooding into their residence.

**{¶2}** The trial court granted the defendants' summary judgment motions for two reasons. First, the trial court determined that the Browns filed their complaint outside the four-year statute of limitations for negligence claims contained in R.C. 2305.09(D). Second, the trial court held that the Browns could not establish that the defendants breached the applicable standard of care, because they did not supply an expert familiar with construction standards. In addition, the trial court granted Jergens' summary judgment motion on the additional basis that a settlement agreement between Jergens and the Browns precluded any future claims arising from the construction project.

**{¶3}** In this appeal, the Browns challenge all three aspects of the trial court's decision. However, because the failure to disclose an expert on the standard of care was fatal to the Browns' claim, and because the Jergens settlement agreement foreclosed future claims for damages against Jergens, we reject the Browns' arguments and affirm the judgment of the trial court.

*Factual and Procedural History*

**{¶4}**  The Browns own and reside in a residential property ("the Browns' property") located downhill from a complex of buildings owned by the Reading School District ("the school complex").  In 2015, the Reading School District decided to tear down and rebuild some of the buildings at the complex.  It hired Voorhis to design the project and Shook and Jergens to perform construction and demolition functions.  The project commenced at the end of the 2016-2017 school year.

**{¶5}**  During the construction in 2017, several trees that had previously separated the Browns' property from the school complex were removed.  The Environmental Protection Agency ("EPA") subsequently inspected the project and issued a "stop work" order in part over concerns about the lack of erosion control measures in place on the site.  To retain any potential water runoff, it recommended the implementation of such measures on the side of the hill leading down to the Browns' property from the school complex.  Plastic fences were later erected on the hill above the Browns' property.

**{¶6}**  Nevertheless, at several points during the construction, rainwater intruded into the Browns' home.  In June 2017, prior to the installation of the fences, water seeped into the Browns' basement.  And in October 2017, during a much heavier rain event, the Browns' basement essentially flooded, causing more extensive damage to their home and landscaping.

**{¶7}**  In February 2018, shortly after the October 2017 storm, the Browns entered into a settlement agreement with Jergens, in which Jergens paid the Browns $8,700.00 in exchange for the release of all current and future claims related to the flooding.

**{¶8}**  The Browns then sued the defendants for negligence on September 13,

2021. Their complaint alleged that the defendants disregarded their duty to protect the Browns' property during the construction project. They contended that the defendants should have erected both an earthen berm around the existing property and a swale to direct flowing water into existing channels as preventative measures against downhill flooding. They also took issue with the failure of the fences to contain the rainwater during the October 2017 storm.

{¶9} Discovery then commenced, and the Browns were separately deposed. In her deposition, Andra testified that water began infiltrating their home after the defendants demolished the existing buildings and removed the trees that stood between their property and the school complex. This first occurred in June 2017, when she noticed a large stream of water flowing down the hill. The water entered the Browns' home, damaging the carpet in their finished basement.

{¶10} During her deposition, Andra was asked to identify a notice of violation sent from the EPA on July 17, 2017. The notice indicated that the school project had been inspected on June 23, 2017, and that it violated storm water discharge guidelines associated with construction activity. Andra was also asked about a "stop work" order issued by the EPA's safety service director on August 1, 2017, which immediately halted construction on the project. Andra testified that, around August 4, 2017, the defendants installed plastic fences or mulch berms consistent with the EPA's recommendations. Andra was unclear as to which defendant was responsible for erecting the fences.

{¶11} Andra further testified that a large rain event took place in October 2017, after the fences were installed. Rainwater spilled over the fences and ran onto the Browns' property, damaging the landscaping and basement. Andra identified photographs depicting the flooding and the damage, which were marked as exhibits to

her deposition. According to Andra, water continued to infiltrate the property through November 2017 each time it rained.

{¶12} Andra testified that a swale was constructed in the spring of 2018 to address the flooding. She further indicated that the water infiltration stopped once the school parking lot was completed and the curbs were erected.

{¶13} Stephen was deposed the same day as Andra. His deposition testimony was consistent with hers.

{¶14} In addition to being deposed, the Browns disclosed an insurance adjuster, Jason Monday, as their sole expert witness. From the record, it appears as though Monday was the adjuster who assessed the damage to the Browns' property following the flooding. Monday did not provide an expert report.

{¶15} Following discovery, all defendants moved for summary judgment on essentially identical bases. The defendants contended that the Browns' complaint should have been filed by June 2021, four years after the initial water intrusion began in June of 2017. Because the complaint was not filed until September of 2021, the defendants argued it exceeded the four-year statute of limitations for negligence claims set forth in R.C. 2305.09(D). The defendants also argued that the Browns lacked an expert witness to explain the standard of care for a construction project like the one undertaken by the Reading School District. Absent an expert to explain how the plastic fencing or its installation was somehow defective, the defendants argued the Browns could not prove the essential elements of negligence.

{¶16} The Browns responded to the motions for summary judgment, arguing that their complaint was filed within the statute of limitations because they sued within four years of the October 2017 storm. They also contended that they were not aware of the fences' negligent installation until they failed to prevent water from

8

entering their property. Regarding expert witnesses, the Browns argued that experts were not necessary to establish the standard of care, because the fact that the water breached the fences and the resulting damage could readily be understood by a layperson.

{¶17} On October 8, 2024, the trial court granted the defendants' motions for summary judgment. As to the statute of limitations, the trial court determined that the Browns discovered the water damage in June 2017 and had four years to file suit from that date. Because they waited until September 2021 to sue, the Browns' claim was time-barred. The trial court also agreed that the Browns could not prove negligent construction and design without an expert to establish the standard of care. Lastly, the trial court interpreted the settlement agreement between the Browns and Jergens to include all future claims arising from the school project, thereby precluding the Browns' current suit against Jergens.

{¶18} The Browns now appeal.

### *Summary Judgment*

{¶19} In their sole assignment of error, the Browns argue that the trial court erred in granting the defendants' summary judgment motions. The Browns raise three specific issues with the trial court's judgment. First, the Browns argue that their complaint was filed within the four-year statute of limitations contained in R.C. 2305.09(D) because the intrusion of water into their property constituted a continuous violation. Second, they argue that a layperson could readily ascertain the defendants' negligence in failing to prevent flooding on their property, rendering expert testimony unnecessary. Third, they argue that the trial court erred in broadly construing the Jergens settlement.

{¶20} We review summary judgment decisions de novo. *Al Neyer, LLC v.*

*Westfield Ins. Co.*, 2020-Ohio-5417, ¶ 13 (1st Dist.). Summary judgment is proper under Civ.R. 56(C) where "(1) no genuine issue of material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Id*. at ¶ 14, citing Civ.R. 56(C). The moving party has the initial burden of informing the court of the basis for the motion and identifying the portions of the record that set forth specific facts demonstrating entitlement to summary judgment. *Id*. at ¶ 15.

## A. *Expert Testimony*

{¶21} Although the Browns begin their argument with the statute of limitations issue, we first address the trial court's expert testimony finding, as this issue is dispositive of the Browns' appeal. We agree with the trial court that the defendants were entitled to summary judgment as a matter of law because the Browns did not support their negligence claim with an expert, regardless of whether the complaint was timely filed.

{¶22} "To prevail on a negligence claim, a plaintiff must establish (1) that the defendant owed a duty of care to the plaintiff, (2) that the defendant breached the duty, and (3) that the defendant's breach proximately caused the plaintiff's injuries." *Wood v. Kroger Co.*, 2025-Ohio-1385, ¶ 20 (1st Dist.). "Whether a contractor exercises reasonable care depends upon the standards which others in the profession must follow." *Riverside Drive Ents., LLC v. Geotechnology, Inc.*, 2023-Ohio-583, ¶ 21 (1st Dist.). The same is true of architects. *Staph v. Sheldon*, 2009-Ohio-122, ¶ 18 (8th Dist.).

{¶23} "Expert testimony is required to establish the standard of care, unless

the lack of skill or care of the professional is so apparent as to be within the comprehension of a layperson and requires only common knowledge and experience to understand it." (Cleaned up.) *Riverside Drive* at ¶ 21. Where a standard-of-care expert is required and the plaintiff fails to provide one, summary judgment is appropriate in favor of the defendant. *See, e.g., Anthony v. Turner/Cargile Joint Venture*, 1995 Ohio App. LEXIS 1299 (10th Dist. Mar. 30, 1995) (affirming summary judgment in favor of architect in suit resulting from building collapse where plaintiff presented no expert testimony to establish standard of care).

**{¶24}** Case law fails to identify with precision the exact kinds of information a layperson can comprehend without expert testimony in a negligence case. But in general courts have excused the need for a standard-of-care expert when a condition is easily observable and its risks require no specialized training or knowledge to understand. *See, e.g., Ballard v. K-Mart Corp.*, 1998 Ohio App. LEXIS 2832, *8-9 (2d Dist. June 25, 1998) (finding expert testimony unnecessary in a personal injury case where item was placed on a shelf such that it might fall). On the other hand, courts require expert testimony to establish the standard of care where the activity at issue requires particularized training or skill. *See, e.g., Filby v. Heffter & Russell LLC*, 2018-Ohio-1333, ¶ 24 (11th Dist.) (observing that that the lack of a qualified expert witness to establish the standard of care in a legal malpractice action provides a basis to award summary judgment to the defendant); *Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App.3d 371, 376-377 (2d Dist. 2000) (affirming trial court's judgment in favor of civil engineer defendant because plaintiff failed to present expert testimony establishing the standard of care).

**{¶25}** The Browns argue that the condition above their property, in which water flowed downhill over the plastic fences at the construction site, is of the former

variety. They assert that the pictures introduced at Andra's deposition, which depict water breaching the fences, would allow a layperson to conclude the defendants acted negligently. In addition, they contend that the defendants' fence installation and the lack of an effective berm and swale during the construction project constituted negligence. Notably, the Browns do not explain which defendant was responsible for designing and erecting the fences or whether a different type of water barrier would have more effectively prevented flooding.

**{¶26}** Contrary to the Browns' position, these are matters beyond the ordinary knowledge of a lay person. While the photographs do support the Browns' position that the barriers failed, they do not explain why or whether a stronger barrier would have withstood the October 2017 storm. Absent specialized training, the average person lacks the capability to assess whether the measures taken by the defendants to slow rainwater runoff were sufficient to meet the standard of care. An expert was therefore required to establish whether the erosion prevention measures taken at the construction site were reflective of those used by the construction and architectural industries. *Riverside Drive*, 2023-Ohio-583, at ¶ 21 (1st Dist.).

**{¶27}** The trial court therefore correctly awarded summary judgment to the defendants. Whether timely or not, the Browns' negligence claim could not be proven without a standard-of-care expert, which they did not present.

### B. The Jergens Agreement

**{¶28}** The trial court also correctly granted Jergens' summary judgment motion. Before the Browns filed suit, Jergens entered into a settlement agreement with the Browns that resolved all pending and future claims related to the school project. That agreement was binding as to this action.

**{¶29}** "[T]he overriding consideration in interpreting a release is to ascertain

the intent of the parties, which intent is presumed to reside in the language the parties chose to employ in the agreement." (Cleaned up.) *Crutcher v. Oncology/Hematology Care, Inc.*, 2022-Ohio-4105, ¶ 31 (1st Dist.). "Only when the language of a contract is unclear or ambiguous will extrinsic evidence be considered in an effort to give effect to the parties' intention." *Al-Zubi v. Cosmetic & Implant Dental Ctr. of Cincinnati, Inc.*, 2020-Ohio-3272, ¶ 9 (1st Dist.). If the terms are unambiguous, courts will not create a new contract using an intent not expressed by the clear language between the parties. *Id.*

**{¶30}** The settlement agreement between Jergens and the Browns clearly and unambiguously released Jergens from all claims for property damage the Browns might make arising from the project. Entitled "Release in Full of All Claims and Rights Related to Property Damage," the settlement agreement discharged Jergens "from any and all claims and damages resulting from or related to the property damage resulting from" the construction project, whether "existing or arising in the future." Its terms were described as "full and final."

**{¶31}** The Browns have failed to explain why the plain language of this settlement agreement should not be enforced. In fact, they do not dispute that the terms of the settlement agreement are clear and unambiguous. Instead, they argue that the settlement agreement only covers damages that occurred prior to its execution. This belies the scope of the agreement, which expressly covers future claims. Thus, the trial court did not err in separately awarding summary judgment to Jergens on the basis that the Browns' claims against it had already been settled.

### *Conclusion*

**{¶32}** Because the Browns failed to present an expert to establish the standard of care, and because the Browns' claim against Jergens was governed by the settlement

agreement, we overrule the Browns' sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK** and **MOORE, JJ.,** concur.